## COOK v. COVEY-BALLARD MOTOR CO.

No. 4438.   Decided January 24, 1927.   (253 P. 196).

162

*Young, Boyle & Moyle,* of Salt Lake City, for appellant.

*O. K. Clay,* of Price, for respondent.

STRAUP, J.

The plaintiff and the defendant, August 26, 1924, in Carbon county, entered into a contract by the terms of which the plaintiff purchased from the defendant a Studebaker car, and as part payment delivered to the defendant a Buick car; the balance of the purchase price was to be paid in monthly installments. As claimed by the defendant, the plaintiff defaulted in making the September and October payments, and, on commencing proceedings in Salt Lake county, the defendant demanded and took possession of the Studebaker car in Carbon county. Thereupon the plaintiff commenced this action in Carbon county, which in effect, was one in claim and delivery, wherein he alleged that he, on November 2, 1924, was the owner in possession and entitled to the possession of the Studebaker car of the value of $1,150, and that he was the owner and entitled to the possession of the car at the commencement of the action, but that the defendant, in Carbon county, on November 2, 1924, wrongfully came in possession and "still wrongfully holds

and retains the possession" of it, under a pretended claim of ownership, to plaintiff's damage in the sum of $100. The prayer was that the plaintiff recover possession of the car or have judgment for $1,150, its value, and $100 damages for its detention.

Later the plaintiff, by leave of court, filed an amended complaint, wherein he alleged that on August 26, 1924, he purchased from the defendant a Studebaker car, at an agreed price of $1,150, and in part payment delivered the Buick car to the defendant, which was accepted and received by it at an agreed value of $400, and that the balance of the purchase price was to be paid in twelve equal monthly installments; that the defendant represented to him that the Studebaker car was a 1922 model; that the Studebaker car was then delivered to the plaintiff and the Buick car to the defendant; that the plaintiff signed a contract in blank which the defendant agreed to complete and fill in, in accordance with the terms of the contract, as stated; that the defendant filled in the blanks in the contract, but, instead of stating that the purchase price of the Studebaker car was $1,150, the contract stated the price to be $1,276, and that the balance of the purchase price of $876, after giving the plaintiff credit for $400 on the Buick car, was to be paid in ten monthly payments of $87.60 each instead of twelve monthly payments of $62.50 each; that the contract, as filled out, showed the Studebaker car to be a 1920 instead of a 1922 model; that, as soon as the plaintiff received the contract he wrote the defendant, "demanding an explanation, but instead of giving the plaintiff any explanation, the defendant, on November 2, 1924, without plaintiff's consent and acting fraudulently, and upon misrepresentation, took said car from plaintiff's possession, and ever since said date kept and retained said car and converted the same to its own use"; that the value of the car was $1,150; that the defendant, acting through its agent, represented to the plaintiff that the agent had legal papers in his possession which entitled him to the possession of the car, "and

relying upon said false representations, plaintiff, against his consent and over his protest, permitted the defendant to take the said car." The prayer was that plaintiff be given judgment for the sum of $1,150, the value of the Studebaker car, together with interest thereon, less the sum of $750 due the defendant.

The defendant answered, admitting that a contract was entered into between the parties, but alleged that the purchase price of the Studebaker car was $1,276; that is, $1,150 plus insurance and equipments, which added to the $1,150, amounted to $1,276, and that the defendant received the Buick car from the plaintiff, for which he was given credit for $400, and that the balance of $876 was to be paid in ten monthly installments of $87.60 each. The defendant further alleged that the plaintiff failed and neglected to pay any part of the monthly installments for September or October, whereupon the plaintiff, on the defendant's demand, delivered possession of the Studebaker car to the defendant as security for the payment of the balance due, but that the defendant was ready and willing to deliver the Studebaker car back to the plaintiff upon payment of what was due and unpaid thereon; and otherwise denied all other material allegations of plaintiff's amended complaint.

The case was tried to a jury with the result that a verdict was rendered in favor of the plaintiff and against the defendant, assessing his damages in the sum of $400, for which amount judgment was entered. The defendant made a motion for a new trial on all of the grounds specified in the statute for a new trial, which motion was granted. Thereafter the plaintiff asked leave to file a second amended complaint, in which he, in substance, alleged that the defendant on August 26, 1924, sold the plaintiff a Studebaker car at an agreed price of $1,150, represented to him that the car was a 1922 model, accepted the Buick car at a valuation of $400 as part payment of the purchase price, and agreed that the balance of $750 was to be paid in monthly payments of $65 each; that relying upon such representation the plain-

tiff delivered the Buick car to the defendant, and defendant delivered to him the Studebaker car; that he signed printed contracts in blank, to be filled in and completed in accordance with the terms as above stated; that shortly thereafter the defendant mailed the plaintiff the contract which he had signed in blank, but instead of the contract showing the purchase price to be $1,150 and providing for installments in the sum of $65 per month and the car a 1922 model, the contract recited the purchase price to be $1,276 and the balance after deducting $400 allowed on the Buick car, to be paid in ten installments of $87.60 per month, and described the car as a 1920 model; that, upon receiving the contract, plaintiff notified the defendant that the contract was not in accordance with the real contract between them, "and thereupon repudiated the terms and conditions of the written contract and demanded a car from the defendant in accordance with the terms and agreement of the parties, a 1922 model for the sum of $1,150, to be paid at $65 per month, instead of $87.60, and that the defendant failed and refused to do anything about the matter; and on or about November 2, 1924, without the consent of the plaintiff, the defendant took the Studebaker car from his possession, without returning, or offering to return to him, the Buick car or the value thereof"; that the defendant ever since kept and retained the Studebaker car; that the reasonable value of the use of the Buick car was $50 per month, and that the plaintiff was deprived of the use of it to his damage in the sum of $700 and was damaged "in the further sum of $400, the value of said car." Judgment was thereupon prayed against defendant "for the return of the Buick car or its value in the sum of $400, and for special damages for the use of said car in the sum of $700."

The defendant objected to the filing of such second amended complaint and demurred thereto upon the ground that it was inconsistent with the original and first amended complaint, and, in effect, presented a new and different cause of action. The objections and demurrer were over-

ruled. The defendant thereupon answered, alleging the contract between the parties to be as theretofore alleged by it. It denied that the Buick car was of the value of $400, and alleged that it was of the value of not to exceed $20, and that the plaintiff had failed to make the September and October payments, as by his contract he had agreed to do; that the defendant because of such nonpayments demanded possession of the Studebaker car from the plaintiff and held it as security for payment of the balance due on the contract. It further alleged that the plaintiff by his original and first amended complaint elected to ratify and confirm the contract, after knowledge of the alleged fraud, and thereby sought to repossess the Studebaker car; that the case on such issues proceeded to judgment in favor of the plaintiff, and by reason of such election, ratification, and confirmation the plaintiff was estopped from disaffirming or repudiating the contract; that in reliance on plaintiff's election and ratification of the contract, the defendant sold and disposed of the Buick car for the sum of $20; that because of such prior confirmation and ratification of the contract and the defendant's reliance thereon, it is now unable to return the Buick car to the plaintiff; and otherwise denied all other material allegations of the amended complaint. The defendant also filed a counterclaim which is unnecessary now to notice.

Upon such issues the case was again tried to the court and a jury, resulting in a verdict in favor of the plaintiff and against the defendant in the sum of $750, upon which judgment in such amount was entered. The defendant appeals. It urges (1) that the court erred in permitting the second amended complaint over the defendant's objections and in submitting the case to the jury on the theory stated in such complaint; (2) errors in other particulars relating to the charge, and especially in directing the jury, if it found for the plaintiff, to allow as damages, in case the Buick car could not be returned, not only the value of the car, but in addition thereto the reasonable value of its use; and

(3) insufficiency of the evidence to support the verdict, especially as to the alleged value of the Buick car and as to the allegations of fraud and misrepresentation.

That there was a contract of purchase of the Studebaker car entered into between the parties is clear. There is a dispute as to some of the terms of it, especially as to the purchase price, and in that connection the amount of each installment to be paid, and as to the model of the car. In such particular it was testified to by the plaintiff that the purchase price of the Studebaker car was to be $1,150, to which was to be added an insurance charge in the neighborhood of $50 and a carrying charge, the exact amounts of which were not known when the contract was originally signed by the plaintiff. He further testified that it was represented to him that the Studebaker car was a 1922 model; that after deducting from the purchase price the agreed amount of $400 for the Buick car, the balance of the purchase price was to be paid in twelve monthly installments at the rate of $65 per month; that under such conditions he signed the contract in blank as to the exact amount of the purchase price and as to the model of the Studebaker car; that, at that time, August 26, 1924, the Studebaker car was delivered to the plaintiff and the Buick car to the defendant in Carbon county, where the transaction was had; that seven or eight days after that the defendant's agent brought back to the plaintiff three copies of the contract, at which time the plaintiff signed them in another place where he had theretofore failed to sign, and that the agent then took the three copies away, but at that time the blanks had not yet been filled in. The defendant contended that the blanks then had been filled in, and that the terms of the contract were as alleged by it and as shown by the contract and as put in evidence. The plaintiff, however, testified that shortly thereafter the contract as put in evidence was mailed to him, but that he shortly thereafter, and on September 12, 1924, wrote the defendant that the contract, as filled out, was not in accordance with the terms agreed upon, and that

he had agreed to pay only the difference of $750, with the possible addition of $50 for insurance, between the Studebaker and the Buick car, and that his understanding was that he was permitted to make such payments in twelve monthly installments of about $67 each, and that it was represented to him that the Studebaker car was to be a 1922 model, and that the contract stated it was a 1920 model; and, unless the defendant would make the agreement satisfactory to him, it "could just as well come and get the car." The plaintiff further testified that defendant paid no attention to the letter, but on November 2, 1924, the agent of defendant demanded of him the unpaid installments of September and October, and asserted that, unless such payments were made, he would be required to take possession of the car and showed plaintiff papers that an action had been commenced for such purpose, and, upon looking at the papers, the plaintiff consented to the defendant taking the car.

It was shortly after that the plaintiff commenced this action, alleging that he was the owner of the Studebaker car valued at $1,150 and entitled to the possession of it, and that it was wrongfully taken from him by the defendant and wrongfully detained by it, and demanded judgment for the possession of the car or the value thereof, in case delivery could not be had. The defendant therefore urges that the plaintiff, by pursuing such course, elected to treat the contract as valid, either in terms as claimed by the defendant or as claimed by him, and thereby precluded himself from thereafter rescinding or repudiating the contract or treating it as invalid, and seek to recover what he paid out on the contract, the return of the Buick car or its value, in case delivery thereof could not be had, and as was demanded by the second amended complaint. We are of the opinion the contention is well founded. Certain it is that the plaintiff, by his original and first amended complaint, by reason of the contract, asserted that he was the owner of the Studebaker car and entitled to the possession of it, and

upon that ground sought recovery of it or its value, in case delivery thereof could not be made. The conclusion, as it seems to us, is unavoidable that such assertion, and by pursuing such course to judgment, constituted a recognition or ratification of the contract. True, for some reason not apparent on the record, the trial court set that judgment aside and granted a new trial. It may have been because the plaintiff did not comply with the terms of the contract on his part, even as he contended the terms were; that is, that he had not made any payment of any part of the September or October installments, and, as he himself admitted, he under the contract was required to do. When the plaintiff thereafter by his second amended complaint proceeded upon the theory of a repudiation and invalidity of the contract, no longer claiming to be the owner of the Studebaker car or entitled to its possession, but claiming the right to recover back what he had paid out on the contract, the Buick car or its value turned in by him as part payment of the purchase price of the Studebaker car, he asserted and maintained a theory inconsistent and hostile with that theretofore asserted and maintained by him.

It is well settled that one who is induced to make a sale or trade by the deceit of a vendee has the choice of two remedies upon his discovery of the fraud; he may affirm the contract and sue for his damages, or he may rescind it and sue for the property he has sold or what he has paid out on the contract. The former remedy counts upon the affirmance or validity of the transaction, the latter repudiates the transaction and counts upon its invalidity. The two remedies are inconsistent, and the choice of one rejects the other, because the sale cannot be valid and void at the some time. *Stuart* v. *Hayden* (C. C. A.) 72 F. 402; 5 Page on Contracts, § 3023. Whatever there was of fraud or misrepresentation as to the model of the Studebaker car was discovered and known by the plaintiff before he commenced the action, indeed, when he wrote his letter of September 12 to the defendant, but, notwithstanding such

knowledge, he, when the Studebaker car was taken from him, commenced an action claiming to be the owner of the car and entitled to its possession and sought its recovery or its value. There thus were open to him at that time two coexisting remedies, which were alternative and inconsistent with each other, and, when the plaintiff elected the one as he did, the other was no longer available.

There is some conflict in the authorities as to when an election of a remedy is conclusive. There are authorities to the effect that an election, being in the nature of an estoppel in pais or an estoppel by record, to be conclusive, must, to some extent, be efficacious, and that the party against whom the estoppel is urged must have received some benefit by his election or have caused some detriment to the other party. *Register* v. *Carmichael*, 169 Ala. 588, 53 So. 799, 34 L. R. A. (N. S.) 309, and cases there referred to. In a qualified sense the same thought seems to be expressed in 9 R. C. L. 961. If, by these authorities, the rule is intended to be declared that there must be some affirmative or express benefit or detriment shown, something more than a mere implied benefit or detriment, we believe it to be contrary to the weight of authority.

The true rule seems to be (1) that there must be, in fact, two or more coexisting remedies upon which the party has the right to elect; (2) the remedies thus open to him must be alternative and inconsistent; and (3) he must by actually bringing an action or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies. 20 C. J. 19-37, and cases there cited. With such elements present, an election once deliberately made by the institution of a suit, by which the remedy is sought to be recovered, is final, and his failure to secure satisfaction by means of the remedy which he has adopted furnishes no legal reason to permit him to resort to the other. Notes to *Fowler* v. *Bowery Sav. Bank*, 10 Am. St. Rep. 489; *Robertson* v. *Robertson*, 43 Nev. 50, 180 P. 122, 187 P. 929. And this court has held, where there

is a duty of election as to a particular remedy, the bringing of an action based upon one remedy constitutes an irrevocable election, except in case of mistake of fact or other legal excuse. *Howard* v. *Paulson Co.,* 41 Utah, 490, 127 P. 284. While an election as applied to remedies is in the nature of an estoppel, yet, in some respects, the former differs materially from the latter. 20 C. J. 4. The doctrine of an election rests upon the principle that one may not take contrary positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves a negation or repudiation of the other, the deliberate and settled choice of one, with knowledge or means of knowledge of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again. *Thompson* v. *Howard,* 31 Mich. 309; note to *Field* v. *Great Western El. Co.,* 66 Am. St. Rep. 611.

We therefore are of the opinion that the second amended complaint presented a remedy inconsistent with that presented by the original and first amended complaint, the facts with respect to each being fully known to the plaintiff when he commenced the action, and that defendant's objections and demurrer thereto ought to have been sustained. In such view, it is unnecessary to pass upon the other assigned errors.

The judgment of the court below is reversed and the cause remanded for a new trial. Costs to the appellant.

THURMAN, C. J., and CHERRY and HANSEN, JJ., and McCREA, District Judge, concur.

FRICK, J., absent on account of illness.