ROYAL RESOURCES, INC., Plaintiff and Respondent,

v.

GIBRALTER FINANCIAL CORP., Gibralter Securities Corp., (a wholly owned subsidiary of Gibralter Financial Corp.), Lynn Dixon, and George Perry, Defendants and Appellants.

No. 15817.

Supreme Court of Utah.

Nov. 5, 1979.

Richard J. Leedy, Salt Lake City, for defendants and appellants.

Allan J. Moll, Brent H. Cameron, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant, Lynn Dixon, appeals from a personal judgment against him for monies had and received.

The facts giving rise to this lawsuit are not generally in dispute. The corporate defendants (hereinafter collectively referred to as "Gibralter"), were engaged in the securities trading business and defendant, Lynn Dixon, (hereinafter "Dixon") was the president of Gibralter and acted as its broker, selling stocks using both his own account and customer accounts. Plaintiff had an ongoing business relationship with Gibralter which centered upon a practice known in the securities trading business as "early settlement." Under said practice, when Gibralter engaged in a transaction involving the sale of stock, which would normally require a seven-day settlement period,[1] plaintiff would advance sums of money by way of such early settlements so that Gibralter's customers could obtain their sale proceeds prior to the lapse of the seven-day period.[2] The procedure simply involved the execution of an assignment by the customer of the sales proceeds being held by Gibralter, which, in due time, would pay the same over to plaintiff, thus completing the transaction.

Plaintiff advanced the monies in question by delivering two checks to Dixon which totalled $10,000. The checks were drawn in favor of Dixon and were personally endorsed and cashed by him. When repayment was not forthcoming, plaintiff filed the subject action alleging a cause of action against Gibralter and individually against Dixon and one Perry. for having had and received the monies.

At pre-trial, the court was advised of the defunct status of Gibralter and the parties stipulated that judgment be awarded against it. The subsequent order and judgment of the court awarded judgment by confession against Gibralter in accord with the demand of the complaint, and it specifically approved the further stipulation of the parties that the defendants would cooperate fully with SCIPIC[3] for the purpose of making plaintiff whole by federal insurance compensation. The court further ordered, pursuant to stipulation of the parties, that the trial of the remaining issues involving the individual liability of Dixon and Perry be continued without date.

The SCIPIC claim failed for reasons not the least of which was the lack of necessary documentation by the defendants. Consequently, plaintiff moved for and obtained an order of the court for production of documents and, pursuant to the pre-trial order, sought to determine the remaining issue as to the individual liability of Dixon and Perry. Despite the court order, the documents were never produced, and on April 19, 1978, the matter proceeded to trial.

At the onset of the trial, the court recited the fact that judgment had been previously entered against Gibralter, leaving only the issue of individual liability to be determined. Upon the representation of plaintiff that it could not sustain its burden of proof as to Perry, and on motion of counsel for Dixon and Perry, the complaint was dismissed as to Perry. No such motion to dismiss, for any reason, was made on behalf of Dixon. In fact, plaintiff's basic proffer of proof covering its prima facie case was stipulated to by Dixon thus eliminating the necessity of plaintiff calling witnesses. Dixon then proceeded to present his case.

1. Provided for the S.E.C. rules not otherwise pertinent here.

2. Said early payments were discounted for cash at the rate of four percent.

3. A federal insurance program deemed available to compensate plaintiff's loss occasioned by Gibralter.

He acknowledged having had and received the monies advanced by plaintiff, but had no recollection as to the ultimate disposition thereof, and produced no documentary evidence to resolve the issue.

Plaintiff had an obviously legitimate claim and was entitled to recover thereon. The trial court was thus faced with a single factual issue, viz., whether or not Dixon (aside from his agency relationship with Gibralter) was personally liable to plaintiff.

The case was briefly argued and presented. The court ruled from the bench in favor of the plaintiff, stating the matter as follows:

. . . [Y]ou've got a man here with two hats. Use the corporation when he wants to and his own account when he wants to . . . He's in the position where he can control—it's a lax thing, these transactions. But sooner or later there's got to be some written evidence of something here. . . . He's in the position to maneuver. I don't know whether that's the case or not. But I think that under the situation that he— he either through the company or through his own records would have to show that this was actually assigned over to the company and it wasn't maneuvered. I'll award judgment to the Plaintiff.

Dixon asserts three points of error on appeal: (1) that it was error to hold him personally liable as an agent of Gibralter; (2) that it was error to draw an evidentiary conclusion from his failure to produce documents; and (3) that plaintiff was precluded from taking judgment against him, having previously elected to take judgment against Gibralter.

■ The lack of documentary evidence is at the very nub of this controversy, and since the lack thereof bears directly upon both the first and second assignments of error, they are considered together. Having stipulated to plaintiff's basic prima facie case, that of having had and received the funds in question, it was incumbent upon Dixon to bear the burden of going forward. Under the facts peculiar to this case, such required some showing as to the disposition made of the funds. Yet, none was made. No evidence was produced, documentary or otherwise, as to whether Gibralter received the proceeds of the purported stock sale, whether Dixon paid over to Gibralter's customer the monies advanced by plaintiff, or whether Dixon himself was still in possession thereof. Faced with such an anomalous situation, it was within the prerogative of the trial court to conclude that Dixon's actions were not those of an agent of Gibralter and, in the absence of a satisfactory explanation of the whereabouts of the monies, to further conclude that Dixon was acting for himself and hence became personally liable to plaintiff therefor.

Dixon's initial contention of error presupposes that the trial court based its finding of liability on the basis of agency, but as evidenced by the excerpt from the court's ruling, *supra*, such was obviously not the case, and his contention is therefore without merit.

Whether or not Dixon dealt on his own, or as an agent of Gibralter, was an issue presented at trial by the stipulation of the parties. The trial court affirmatively found that it was in his individual capacity that Dixon received the check drawn in his favor, that he endorsed it, and received the proceeds thereof. Consequently, the doctrine of law that when an agent deals for a disclosed principal the agent cannot be held personally liable has no application to this case.

Dixon next contends that the documentary evidence sought by plaintiff and which he failed to produce (although ordered to do so), was equally accessible to plaintiff. This argument is also without merit inasmuch as the ultimate disposition of the monies was peculiarly within Dixon's knowledge.

Turning now to Dixon's final point on appeal, that of election of remedies, such a defense is unavailable to him for two reasons. First, under the facts peculiar to this case, no election of remedies was made, and, second, the defense was not presented at

the trial level, but is raised for the first time on appeal.

■ The doctrine of election of remedies is a technical rule of procedure and its purpose is not to prevent recourse to any remedy, but to prevent double redress for a single wrong.[4] Said doctrine presupposes a *choice* between inconsistent remedies, a knowledgeable selection of one thereof, free of fraud or imposition, and a resort to the chosen remedy evincing a purpose to forego all others.[5]

■ The defense of election of remedies is an affirmative one and must be raised by way of answer,[6] motion,[7] or demand[8] so as to put the issue before the trial court, and is not to be raised for the first time on appeal. Also, the defense may be waived, or a litigant may be estopped to assert such defense.

■ Applying the foregoing concepts to the facts of this case, it is apparent that no election of remedies was made, nor was one in any manner demanded.[9] On the contrary, (presumably cognizant of their respective rights afforded by the doctrine of election of remedies) the parties chose to enter into a stipulation at variance with said doctrine whereby plaintiff was permitted to take judgment against Gibralter, and in the event of no recovery, to then proceed against Dixon and Perry individually. It is noteworthy that, except for the stipulation, had plaintiff chosen to take judgment against Gibralter, such may well have been viewed as an election of remedies, and if properly raised as a defense, it would have obviated the necessity of trial and this appeal.

The facts presented necessarily provoke certain important conclusions. The judgment against Gibralter was of little or no value except for the possibility of compensation that may have been forthcoming from SCIPIC, and as it now stands, the judgment has no value at all. Also, said judgment was clearly in the best interest of Dixon and Perry since it deferred a determination of their own liability, and in fact, it would have absolved them of liability had the claim against SCIPIC materialized. Needless to say, it was highly appropriate for the trial court to accept the various stipulations of the parties and so attempt to resolve the lawsuit.

When the SCIPIC claim failed and the trial proceeded on the issue of individual liability, it is not surprising that Dixon chose to abide by his prior stipulation, as accepted by the court, rather than to attempt to renege by challenging plaintiff's claim as being inconsistent and demanding that an election then be made.[10] Had he done so, it would have been he who was placed in a truly inconsistent position, and not plaintiff.

Dixon's prior stipulation which reserved the issue of his individual liability, coupled with his further action, and non-action, at the time of trial on said issue, constitutes a clear and unequivocal waiver of any right he may have had to otherwise challenge plaintiff's right to judgment against him. Also, in the face of the stipulations of the parties, Dixon is estopped to assert the defense of election of remedies.

---

4. 25 Am.Jur.2d, Election of Remedies, Section 2, and also see the cases cited therein.

5. Ibid., Section 14. In accord, *Farmers & Merch. Bank v. Universal C.I.T. Cr. Corp.*, 4 Utah 2d 155, 289 P.2d 1045 (1955); *Cook v. Covey-Ballard Motor Co.*, 69 Utah 161, 253 P. 196 (1927), citing *Howard v. Paulson*, 41 Utah 490, 127 P. 284 (1912).

6. Rule 8(b) and (c), Rules of Civil Procedure.

7. Rule 12(a), (b), and (c), Rules of Civil Procedure.

8. *Costello v. Kasteler*, 7 Utah 2d 310, 324 P.2d 772 (1958).

9. That failure to make such a demand constitutes waiver, see *Costello v. Kasteler*, supra, footnote 8.

10. It is to be noted that had Dixon claimed either that an election had already been made or demanded that one then be made, the interests of justice would seem to dictate that the stipulation of the parties be vacated and set aside, thus placing the parties in status quo so as to afford plaintiff an opportunity to make a knowledgeable election of remedies.

The evidence in all respects supports the findings of the trial court and its judgment is affirmed. Costs to plaintiff.

CROCKETT, C. J., and WILKINS, J., concur.

STEWART, J., concurs in result.

MAUGHAN, Justice, dissenting:

For the following reasons, I dissent. Defendant Dixon is correct in his contention plaintiff is precluded from taking judgment against him, after it had previously taken judgment against the two corporate defendants, hereinafter referred to as Gibralter. The operative principle herein is the doctrine of judicial estoppel, which does not permit a party, during the course of litigation, to assume or occupy inconsistent and contradictory positions.

Plaintiff, in its amended complaint, alleged that on April 11, 1975, it executed and delivered to Gibralter Securities a check in the amount of $7,680. On April 16, 1975, plaintiff executed and delivered to Dixon, *registered agent* of the defendant corporation, two checks. Plaintiff further alleged, pursuant to a previous and ongoing course of conduct, the sums were advanced and loaned on a short-term basis to defendants.

Plaintiff further alleged:

7. That defendant Dixon is liable individually in that he was acting as an agent of George Perry in his personal, not corporate, capacity; and further that defendant George Perry likewise is liable individually by virtue of a course of conduct in the within transactions evidencing actions apart from his corporate capacity.

8. That defendants are liable jointly and individually for monies had and received, or in the alternative are unjustly enriched in the amount claimed.

Wherefore, plaintiff prays judgment against defendants, jointly and individually, in the principal sum of $10,680, plus interest and costs.

Gibralter was in default. It was by stipulation of the parties the plaintiff was awarded judgment against Gibralter. By this first judgment, Gibralter admitted its indebtedness to plaintiff, and plaintiff accepted Gibralter as its debtor according to the pleadings.

The majority opinion states the lack of documentary evidence is at the very nub of this controversy. The opinion declares:

. . . No evidence was produced, documentary or otherwise, as to whether Gibralter received the proceeds of the purported stock sale, whether Dixon paid over to Gibralter's customer the monies advanced by plaintiff, or whether Dixon himself was still in possession thereof.

This so-called missing evidence was conclusively established by plaintiff taking judgment against Gibralter based on pleadings, alleging Gibralter was the debtor and the transaction was conducted by the registered agent, defendant, Dixon. Where a party is successful in a position taken in a court proceeding, that position rises to a level of conclusiveness, and constitutes a solemn and sworn acknowledgment of the correctness of his claim.[1]

The doctrine of judicial estoppel has as its object the prevention of toying with judicial process. For my view, such toying occurs when a litigant is allowed success while maintaining inconsistent positions.

The maxim "one cannot blow hot and cold, in the same breath" finds its expression in the doctrine of judicial estoppel. A litigant is not allowed to maintain inconsistent positions in judicial proceedings.[2]

When plaintiff assumed the position its transaction was a loan to Gibralter, conducted by registered agent, Dixon, took judgment against Gibralter on that basis, plaintiff could not thereafter assume a contrary position and take judgment against Dixon, individually, on the basis, Dixon *was*

1. *Allen v. Allen*, Wyo., 550 P.2d 1137, 1142 (1976).

2. *Id.* Also see 31 C.J.S. Estoppel § 117 b, pp. 623–627.

*not* the registered agent, and the transaction *was not* a corporate obligation.[3]

In *Loomis v. Church* [4] the court stated:

.   .   .   It is quite generally held that where a litigant, by means of such sworn statements, obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter. [Citations]

This majority opinion characterizes Dixon's third point on appeal, as an election of remedies defense; and holds such to have been waived. In my view, there are two basic fallacies in such a position.[5] First, at the time of the trial of Dixon's individual liability, from the pleadings there was no apparent inconsistency. The claim against Dixon was for money had and received. Although the assignments were described in various ways, there was some evidence the assignments were the accounts receivable of Gibralter. This description is consistent with plaintiff's pleadings, which allege that sums were loaned on a short-term basis.

Gibralter's bookkeeper testified the proceeds from the accounts receivable were deposited in Gibralter's general banking account and used to pay the expenses of the corporation. Such actions constituted a misapplication of funds, for an assignor who collects a sum due on an assigned chose is regarded as holding trust funds belonging to the assignee. The assignee may recover these funds either in an action for money had and received or in conversion. Dixon, as President, and having active management, charge, and control of the affairs of the corporation, could also be held individually liable if the evidence indicated he participated, or had knowledge amounting to acquiescence, or committed a breach of duty he owed to plaintiff.[6] If plaintiff had proceeded to recover against Dixon, individually, on this basis, there would have been no inconsistency and no grounds for a judicial estoppel.[7] Therefore, it would have been error if the trial court had granted a motion to dismiss, if made by Dixon on the ground of election of remedies prior to trial. Such, however, is claimed by the majority opinion as the appropriate procedure. The grounds for the judicial estoppel did not emerge until plaintiff took the position there was no assignment, no corporate obligation, and Dixon was not acting as an agent of a fully disclosed principal. This position was in complete contradiction of the facts upon which plaintiff was awarded judgment against Gibralter.

Second, the majority opinion fails to distinguish between an election of remedies and an election of substantive rights.

Frequently, what is often spoken of in judicial opinions as a choice between remedies is in reality a choice between substantive rights. The distinction is one not infrequently obscured, and yet it is important that it is heeded. An election between substantive rights goes not to the form, but to the substance, affecting some right selected, whereas an election

---

**3.** *King v. Clodfelter*, 10 Wash.App. 514, 518 P.2d 206, 210 (1974); *Citizens Bank v. C & H Cosntruction & Paving Co., Inc.*, 89 N.M. 360, 552 P.2d 796, 802 (1976); *Mecham v. City of Glendale*, 15 Ariz.App. 402, 489 P.2d 65, 67 (1971); *In Re Estate Of Cohen*, 105 Ariz. 337, 464 P.2d 620, 623–624 (1970).

**4.** 76 Idaho 87, 277 P.2d 561, 565 (1954).

**5.** Of subordinate interest is the case of *Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015, 1017 (1974), wherein it is stated: "First, the doctrine of election of remedies is not a doctrine of substantive law. It is a rule of procedure or judicial administration. It is no longer a de-

fense. The common law doctrine has no application under Rule 8(e)(2) [§ 21–1–1(8)(e)(2), N.M.S.A. 1953 (Rep.Vol. 4)] .   .   ." That rule is substantially the same as our 8(e)(2), U.R.C.P.

**6.** *Patrons State Bank And Trust Company v. Shapiro*, 215 Kan. 856, 528 P.2d 1198 (1974).

**7.** Those elements such as reliance and injury or prejudice to the individual, which are generally essential to the operation of an equitable estoppel do not enter into a judicial estoppel or at least not to the same extent. 31 C.J.S. Estoppel § 117b, p. 626.

of remedies goes to the forms of action or procedure, and has no reference to a choice between substantive rights. Although the courts are not in agreement whether an election of an inconsistent remedial right is conclusive prior to judgment, if a litigant chooses one of two or more substantive rights, he is bound by his choice, regardless of whether he obtains a judgment.[8]

There is further elaboration of the distinction in Restatement, Contracts, § 381, Comment d:

A choice between remedies for an injury must be distinguished from a choice between substantive rights and privileges. An offeree has a choice between acceptance and rejection; and a single communicated statement is operative as the final and only choice. An infant has a choice, on reaching majority, between ratification and disaffirmance of his previous contract. Again, a communicated statement is generally final. The same is true as to the ratification and disaffirmance of the unauthorized act of an agent or of a contract that is voidable for fraud. These are choices between substantive legal relations, between contract and no contract. The relation that is chosen is created by a mere manifestation of assent. In these cases the bringing of a suit may be such a manifestation.[9]

In the instant case, plaintiff made an election between alternative substantive rights. Plaintiff could claim its loan transactions were with Gibralter and conducted by agent, Dixon, or it could claim the acts of Dixon were unauthorized and were not a corporate obligation and, therefore, Dixon was personally liable for money had and received. If Gibralter had denied Dixon's authority, or that the loans were not for corporate purposes and Dixon was not the corporate agent in the transaction, but was acting as an individual on his own account, plaintiff's pleadings provided for this contingency in its claim for money had and received by Dixon. When plaintiff entered into the stipulated judgment against Gibralter, plaintiff manifested its election of substantive rights, viz., it had a contract with the principal, conducted by its agent. By the stipulation, Gibralter ratified any act of its agent and accepted the transaction as a corporate obligation. Thus, plaintiff elected with whom it had substantive legal relations and became bound by the corresponding rights and duties as set out by the substantive law. Plaintiff cannot subsequently renounce its election of substantive rights, and Dixon is correct in his contention that he is not individually liable to plaintiff, because of his status as an agent to a fully disclosed principal.[10]

---

**8.** 25 Am.Jur.2d, Election Of Remedies, § 7, p. 651.

**9.** Also see *Petty v. Clark,* 113 Utah 205, 214, 192 P.2d 589, 593–594 (1948): ". . . Substantive law is defined as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to or cause for action, as distinguished from adjective law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective. . . ."

**10.** See *Hennesy Equipment Sales Co. v. Valley National Bank,* 25 Ariz.App. 285, 543 P.2d 123, 124 (1975): "It would therefore appear that a plaintiff who has alternative substantive rights against two persons and by pursuing a substantive right against one person, that pursuit acts as a ratification of the wrongful act of the other, the plaintiff is precluded from subsequently pursuing his remedy against the wrongdoer whose act was ratified. . . ." Also see 116 A.L.R. 601, 602 for a discerning discussion of the distinctions between an election of remedies and an election of substantive rights.