FILED
United States Court of Appeals
Tenth Circuit

October 9, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JONI R. BOULWARE; THE JONI R.
BOULWARE TRUST,

      Plaintiffs-Appellants,

v.

DWIGHT SHANE BALDWIN; MARK
STAPLES; SILVERLEAF FINANCIAL;
SILVERLEAF VENTURES;
SILVERLEAF FINANCIAL 5;
SILVERLEAF FINANCIAL 17,

      Defendants-Appellees,

and

1333 BON VIEW CORPORATION,

      Defendant.

No. 12-4148
(D.C. No. 2:11-CV-00762-TS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs Joni R. Boulware and Joni R. Boulware Trust lost a great deal of money through investments made with defendants. After plaintiffs threatened legal action, the parties resolved the matter through a settlement agreement. When defendants failed to make payments called for by the agreement, plaintiffs brought this action asserting two mutually exclusive sets of claims: (1) twenty-nine state and federal claims for fraud and associated conduct relating to the investment losses and (2) three contract claims (alternatively for specific performance, damages for breach, or declaratory judgment) based on defendants' breach of the settlement agreement executed to resolve the former claims. The district court ultimately entered a money judgment for plaintiffs, including pre- and post-judgment interest and an unimpeded right to proceed directly with execution by garnishment and attachment, on their claim for breach of the settlement agreement. The district court also held that this judgment, specifically sought by plaintiffs, constituted a binding election of remedies and, accordingly, dismissed with prejudice all of the underlying claims resolved in the settlement agreement (as well as the claims seeking alternative equitable relief based on the agreement). Plaintiffs now appeal, challenging the dismissal of the underlying claims as an erroneous application of the legal doctrine of election of remedies. We review de novo the district court's interpretation of both federal and state law, *United States v. Gibbons*, 71 F.3d 1496, 1498–99 (10th Cir. 1995) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991)), and affirm for the reasons explained below.

"The basic purpose of the [election of remedies] doctrine is to prevent a plaintiff from obtaining a windfall recovery, either by recovering two forms of relief that are premised on legal or factual theories that contradict one another or by recovering overlapping remedies for the same legal injury." *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 293 (4th Cir. 2010); *see Royal Res., Inc. v. Gibralter Fin. Corp.*, 603 P.2d 793, 796 (Utah 1979) (noting election of remedies is meant "to prevent double redress for a single wrong" and thus "presupposes a Choice [sic] between inconsistent remedies").[1] Our analysis therefore must begin with the claims plaintiffs brought after defendants defaulted on the settlement agreement.

As plaintiffs point out and defendants concede, execution of the settlement agreement did not foreclose legal action on the underlying claims in the event defendants failed to perform as agreed. Indeed, in that event both a general principle of contract law and a specific provision of the parties' agreement preserved plaintiffs' right to seek relief on those underlying claims in lieu of enforcing the agreement. As for the legal principle, a settlement agreement "constitutes an

---

[1]     We have held that election of remedies is governed by state law in diversity cases. *McKinney v. Gannett Co.*, 817 F.2d 659, 671 (10th Cir. 1987). We have not, however, clarified what law governs where, as here, state and federal claims are involved and the former are in federal court solely through supplemental jurisdiction (the parties are not diverse). The briefing has focused on Utah law, without addressing this complication. As Utah and federal law, both cited above, do not appear to conflict in a manner material to our disposition, we need not settle this latent choice-of-law question.

executory accord which allows the party alleging breach thereof the option of seeking enforcement of the settlement agreement *or of rescinding that settlement agreement and pursing the underlying claim[s].*" *Tebbs, Smith & Assocs. v. Brooks*, 735 P.2d 1305, 1307 (Utah 1986) (emphasis added); *see Snider v. Circle K Corp.*, 923 F.2d 1404, 1408 (10th Cir. 1991) (holding that, upon defendant's breach of agreement settling Title VII claim, plaintiff may bring an action for breach as an alternative to reinstating the underlying claim, citing *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984)).[2] As for the contractual reservation, the settlement agreement, as subsequently modified by the parties, specifically gives plaintiffs the option to void the agreement and pursue the underlying claims in the event defendants fail to make

---

[2] Once again, we cite to state and federal authority to obviate a choice-of-law question, this time involving the law governing settlement agreements. In *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000), this court appeared to follow the majority rule that state law governs the enforcement and interpretation of private settlement agreements even if they settle federal claims, although the opinion did not explicitly acknowledge that complication. *See* Judge Morton Denlow & Jonny Zajac, *Settling the Confusion: Applying Federal Common Law in Settlement Enforcement Proceedings Arising from Federal Claims*, 107 Nw. U. L. Rev. 127, 148–49 (2012) (discussing *McCall*); *see also Morris v. City of Hobart*, 39 F.3d 1105, 1111–12 (10th Cir. 1994) (holding enforcement of agreement settling Title VII claim did not provide basis for federal jurisdiction because it did not involve substantial question of federal law). But earlier in *Snider*, we had held that "[f]ederal common law governs the enforcement and interpretation of such agreements [settling Title VII claims] because the rights of the litigants and the operative legal policies derive from a federal source." 923 F.2d at 1407 (internal quotation marks omitted). It is thus not entirely clear whether state or federal law is controlling on the effect of the executory settlement agreement here, but as the parties have not noted, nor are we aware of, a material difference between Utah and federal law on the matter, we need not resolve this latent issue. *See Heuser v. Kephart*, 215 F.3d 1186, 1190–91 (10th Cir. 2000) (noting same uncertainty in circuit case law and following same course).

timely payment. *See* App. at 105, 145. But plaintiffs' right to either enforce and recover under the settlement agreement or secure redress on the underlying claims just raises the election-of-remedies question; the answer depends on whether these choices are mutually exclusive and, if so, whether plaintiffs' conduct in this litigation effected a binding election between the two.

Satisfaction of the first of these qualifications is obvious. Enforcing a settlement agreement to recover damages for its breach is plainly exclusive to voiding or rescinding it to pursue the underlying claims; that is why these two courses are characterized as *disjunctive options*. *See Tebbs, Smith & Assocs.*, 735 P.2d at 1307; *Arnold v. United States*, 816 F.2d 1306, 1309 (9th Cir. 1987).[3] Plaintiffs respond by noting that their two sets of claims ultimately "seek to remedy the same wrong," Aplt. Br. at 10, but that is precisely the point: obtaining relief would right the wrong twice, resulting in a patent double recovery. *See generally Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1078–79 (2d Cir. 1993) (noting "obvious mistake of law" in double recovery on settlement agreement and on claims settled).

---

[3]    The alternative nature of these courses of action is also clearly the import of the *Snider* and *Kirby* cases cited earlier, but due to the way the operative issue was framed in those cases, they did not have occasion to explicitly draw out the point about disjunctive options made here. We later did that, specifically in reference to those cases, in *Alcivar v. Wynne*, 268 F. App'x 749, 754 (10th Cir. 2008) (unpublished). While that decision is not precedential, we cite it here for its relevance and persuasive value, pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1(A).

The second qualification, regarding how and when the election of remedy occurred here, requires more analysis, turning on the distinction between pursuit and attainment of a remedy. Plaintiffs contend they were entitled to pursue their alternative claims, and they are correct on that point. Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims. *See Campbell v. Barnett*, 351 F.2d 342, 344 (10th Cir. 1965) (noting "Rule 8(e)(2)[4], F.R.Civ.P., permits a plaintiff to plead alternate, hypothetical and inconsistent claims"); *see also Kikumura v. Osagie*, 461 F.3d 1269, 1296 (10th Cir. 2006) (recently noting same point), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).[5] But plaintiffs did not just plead the alternative breach-of-settlement and underlying fraud claims. They sought and obtained the entry of judgment on the former after prevailing on a motion for partial summary judgment. At that point, a binding election occurred and the underlying claims addressed in the settlement agreement were extinguished. *See Homeland Training Ctr., LLC*, 594 F.3d at 293 (noting alternative-pleading rule and holding that conclusive election of remedy occurs "where a suit has advanced to judgment");

---

[4] The operative provision is now found in Fed. R. Civ. P. 8(d)(3).

[5] Federal pleading rules generally control in federal court. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008). But as this alternative-pleading principle is integrally related to the election-of-remedies analysis here, which may in turn be controlled by state law, we note for completeness' sake that Utah law likewise allows for the pursuit of inconsistent claims at the pleading stage. *See Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1214 & n.1 (Utah 2006).

- 6 -

*Haphey v. Linn Cnty.*, 924 F.2d 1512, 1518 (9th Cir. 1991) (same); *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1168 (Utah 1983) ("Though [alternative] pleading is permissible under our authorities, . . . the court could not properly enter judgment on both theories [pursued by plaintiff], since that would represent a double recovery.").

Plaintiffs nevertheless insist they did not abandon their underlying claims. They cite cases indicating an election of remedy must be a "knowledgeable and unequivocal choice," *Berger v. State Farm Mut. Auto Ins. Co.*, 291 F.2d 666, 668 (10th Cir. 1961), "evincing a purpose to forego [sic] all others," *Royal Res. Inc.*, 603 P.2d at 796, and say they "had no intention of releasing the Fraud Claims unless and until defendants paid all amounts due under the Agreement." Aplt. Br. at 12. In other words, they contend they may take unequivocal legal action—securing a judgment on the settlement agreement—that the law plainly deems a binding election, yet avoid the consequences of that action (securing a double recovery in the process) by harboring a contrary subjective intention to preserve the underlying claims their action objectively disavowed. Just stating their position in explicit terms suffices to indicate its untenability, and indeed we find no support for it in the cases cited or the case law generally.

Plaintiffs further argue that operation of the election-of-remedies principle is inconsistent with the terms of the settlement agreement here, specifically the provision allowing them to void the agreement if defendants fail to perform. As already noted, that provision (along with the general law of executory accords) is

- 7 -

what gave plaintiffs the remedial choice—between a claim for breach or pursuit of their underlying claims—prompting the election-of-remedies question in the first place; it does not answer or obviate the question. It is plaintiffs' position, however, that the provision affords them the right to void the agreement now and proceed on their underlying claims regardless of any contrary remedial action they may have taken on the basis of the agreement in the interim. In their view, the fact that they have obtained a judgment against defendants on their claim for breach—a judgment they have proceeded (quite properly) to execute upon—does not constrain them from voiding the agreement and pursuing the underlying claims. A basic principle of the law of judgments forecloses this position.

A claim pursued to a money judgment, as plaintiffs' claim for breach of the settlement agreement was here, ceases to exist and is supplanted by the judgment, for which the law grants independent means of collection:

> The general rule under federal and Utah law is that when a valid and final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. In such a case, the original claim loses its character and identity and is merged in the judgment.

*Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) (internal quotation marks omitted). In short, having sought and obtained judgment on their claim for breach of the settlement agreement, plaintiffs are now (and have indeed exercised their execution rights as) judgment creditors; they are no longer mere obligees under

the agreement with a claim for breach and alternative right to rescind arising from defendants' failure to perform.

Finally, plaintiffs argue that the election-of-remedies principle creates an incentive for misuse of the settlement process

> pursuant to which individuals could attempt to escape liability for fraudulent conduct by entering into agreements settling fraud claims without any intent to perform under that agreement (*i.e.*, committing fraud a second time), then file bankruptcy and argue that the victims of the fraud have nothing more than a dischargeable contract claim.

Aplt. Br. at 13–14. There are a number of problems with this argument; we need only point out two. First, it is utterly speculative to suggest that the possibility of fraudulent settlement poses such a threat that, even in the absence of evidence of fraud in any specific case, it should negate operation of the election-of-remedies principle. Second, claims based on a settlement agreement preclude relief on the underlying settled claims only upon a clear election of remedies in favor of the former, which as we have seen does not happen automatically at the outset of litigation but requires a more deliberate choice reflected in the decision to take a judgment on the settlement agreement. That is a party's choice to make, and, as with any litigation decision, it is entirely reasonable to expect the party to accept the attendant risks and benefits of the choice when it is clearly made. It is not surprising that plaintiffs are unable to cite to any relevant case authority rejecting the election-of-remedies principle on the equitable grounds they suggest. We decline to embark on such an uncharted course here.

For the above reasons, we agree with the district court that plaintiffs' claims for fraud and related conduct were subject to dismissal based on their election to take a judgment for breach of the settlement agreement resolving those claims. Before we may conclude this appeal on that basis, there are two housekeeping matters. First, plaintiffs have filed (and unsuccessfully attempted to partially withdraw) a motion and amended motion for summary disposition of this appeal against some of the defendants for failure to file an appellee's brief. Electing not to file an appellee's brief waives the right to participate in oral argument, Fed. R. App. P. 31(c), it does not concede the result of the appeal. *See, e.g.*, *Yuan Gao v. Mukasey*, 519 F.3d 376, 379 (7th Cir. 2008) (citing cases). It is the appellant's burden to demonstrate the presence of reversible error in a decision of the district court; we do not disturb such a decision simply because the prevailing party has chosen not to expend resources defending it on appeal. We therefore deny the motions for summary disposition as groundless. Second, plaintiffs have filed a suggestion of mootness regarding two defendants, Dwight Baldwin and SilverLeaf Financial, whose interests with respect to the subject matter were acquired by plaintiffs through execution after this appeal was taken. While our decision may carry no legal effect for these defendants, that fact has no consequence for the validity and effect of our decision per se.

The judgment of the district court is affirmed.  Plaintiff's motion and amended motion for summary disposition are denied.

Entered for the Court


Gregory A. Phillips
Circuit Judge