907 F.2d 1122
 FIRST TENNESSEE BANK, N.A., as Special Guardian of Valerie
Hasty and Curtis Hasty, Mark W. Hasty, as Custodian and next
friend of Valerie Hasty and Curtis Hasty and as personal
representative of the estates of Howard Hasty and Jacqueline
Hasty, Plaintiffs-Appellants,
v.
WILSON FREIGHT LINES, INC., a Georgia Corporation and
Savannah Enterprise Truck Co., a Georgia
Corporation, Defendants-Appellees.
 No. 89-8546.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 3, 1990.
 
 Robert J. Mayes, Louis K. Rosenbloum, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, Fla., Luther Strickland, Jr., Macon, Ga., for plaintiffs-appellants.
 John C. Daniel, III, Martin, Snow, Grant & Napier, Macon, Ga., for Savannah Enterprise Truck Co.
 John E. Edwards, Macon, Ga., for Wilson Freight Lines, Inc.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before CLARK, Circuit Judge, and MORGAN and HILL*, Senior Circuit Judges.
 HILL, Senior Circuit Judge:
 
 
 1
 A collision with a truck, parked temporarily in an emergency lane, instantly killed Howard Hasty and his five-year-old daughter, Jacqueline, and badly injured Hasty's eight-year-old twins, Curtis and Valerie. At trial Hasty's representatives alleged that the truck driver's failure to use reflective triangles, flares or emergency flashing lights proximately caused the accident. The driver conceded that he had not utilized reflective triangles but asserted that he had used emergency "flashers." The district court granted summary judgment in favor of defendants, holding that Hasty's negligence, rather than any alleged failure of the truck driver, proximately caused the accident. We reverse.
 
 FACTS
 
 2
 Howard Hasty, a resident of Adams, Tennessee, drove to Winter Park, Florida, (a distance of roughly 675 miles), on Saturday, August 8, 1987, in order to retrieve his children, Jacqueline, Curtis and Valerie, from his mother's home. He apparently travelled all night, and arrived at his mother's house at roughly 9:00 a.m. on Sunday morning. Hasty then visited his ex-wife, rested briefly on her sofa, and returned to his mother's home. There he rested for another three or four hours. After resting, Hasty ate dinner, telephoned his ex-wife, and then left at about 7:00 p.m. for the return trip to Tennessee.
 
 
 3
 Ronnie Jenkins, a truck driver for defendant Wilson Freight Lines, was also travelling north on Interstate 75. As he neared Macon, Georgia, Jenkins heard a noise from his truck which he could not identify. Jenkins moved into the emergency lane and parked his vehicle; he also testified that he turned on his emergency flashing lights. He examined his truck, found nothing wrong, and re-entered the truck's cab. At that time he saw the headlights of Hasty's car in his rear view mirror, and then felt the impact as Hasty's car collided with him. As we have noted, the collision killed Hasty and his daughter, Jacqueline, and injured his twins, Curtis and Valerie.
 
 PROCEEDINGS IN THE DISTRICT COURT
 
 4
 The plaintiff-appellant First Tennessee Bank, N.A. (as special guardian of Curtis and Valerie Hasty), and plaintiff-appellant Mark W. Hasty, (as custodian and next friend of Curtis and Valerie Hasty, and as personal representative of the estates of Howard and Jacqueline Hasty), filed a complaint, as amended, against Wilson Freight Lines (Wilson Freight), and another defendant. The amended complaint claimed that Jenkins, as an employee of Wilson Freight, negligently operated his tractor-trailer rig, and that this negligence caused Hasty's collision with the rear of his truck. Following discovery, Wilson Freight moved for summary judgment, contending that Hasty's own negligence had proved the sole cause of the collision. The district court agreed, determining that, "as a matter of law, any negligence attributable to Ronnie Jenkins could not possibly have been the proximate cause of the incident involving the Hasty vehicle." The court therefore granted the defendants' motions for summary judgment, and entered final judgment in favor of the defendants.
 
 
 5
 This appeal followed.
 
 DISCUSSION
 
 6
 The appellants now challenge the district court's conclusion that Hasty's own negligence was the sole cause of the collision. Specifically, the appellants contend that the district court misread a pertinent regulation which requires emergency flashing lights to remain in operation until "movement of the vehicle." Appellants contend as well that Jenkins' failure to deploy his reflective triangles also contributed to the accident. Finally, the appellants contend that the district court wrongly concluded that Jenkins complied with the applicable provisions of Georgia's traffic standards. In our view, however, only the first of appellants' contentions merits our consideration.
 
 The Emergency Flashing Lights
 
 7
 49 C.F.R. Sec. 392.22(a) provides as follows:
 
 
 8
 Hazard warning signal flashers.
 
 
 9
 Whenever a motor vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver of the stopped vehicle shall immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices required by paragraph (b) of this section. The flashing signals shall be used during the time the warning devices are picked up for storage before movement of the vehicle.
 
 
 10
 (Emphasis supplied).
 
 
 11
 Jenkins, the driver, testified that once he pulled over into the emergency lane, he "automatically" turned on his emergency flashers, extinguished his headlights, but left his engine running. (He admitted that he never displayed reflective triangles, flares, or other warning devices). An eye-witness, Quinton Guinn, (also a truck driver), on the other hand, testified that he did not remember viewing these emergency flashers on Jenkins' truck. Of course, when we review a grant of summary judgment, we must view "... the inferences to be drawn from the underlying facts ... in the light most favorable to the nonmoving party." Palmer v. BRG of Georgia, 874 F.2d 1417, 1422 (11th Cir.1989). For the purpose of this review, therefore, we assume that Jenkins failed to operate his emergency flashing signal.
 
 
 12
 In its Order, the district court concluded that Jenkins' alleged failure to operate his emergency lights could not have caused the collision:
 
 
 13
 Regardless of whether or not the flashers were operating previously or at the time of the accident, those flashers could properly have been extinguished by Ronnie Jenkins when he returned to the cab of the tractor. The collision occurred after Mr. Jenkins returned to the cab. Any allegedly negligent conduct of Ronnie Jenkins relied upon by plaintiffs is simply too remote in time to be a proximate cause of this collision.
 
 
 14
 Appellants, however, argue that the pertinent regulation requires that the "flashers" remain in operation until "movement of the vehicle," not simply until the driver returns to the cab. Appellants further argue that Jenkins' failure to illuminate his truck might have lured Howard Hasty "into the taillights of the Jenkins' rig under the assumption that it was moving," behavior appellants characterize as an example of the "moth to flame" phenomenon.
 
 
 15
 Appellants' speculation impresses us as creative, and we express no opinion as to the proximate cause of the collision. We do agree, however, that the regulation in question required Jenkins to operate his flashing signal until his vehicle's re-entry onto the highway. The district court's opinion emphasizes that, even without the emergency lights, Jenkins' rig remained "a large vehicle clearly visible with certain lights operating and one preparing to re-enter the highway." As we see it, however, this emergency signal enables approaching motorists not merely to view the stalled truck, but to appreciate the abnormality of its position. For this reason, we hold that the district court should have given a jury an opportunity to decide whether Jenkins' (alleged) failure to activate his warning signal proximately caused the accident.
 
 CONCLUSION
 
 16
 The only issues in this matter which prevents its resolution by summary judgment involve, as we have held, Jenkins' alleged failure to activate his flashing lights, and the appellants' claim that this (alleged) failure proximately caused the collision. The district court correctly decided all other portions of its Order. We therefore REVERSE the district court's grant of summary judgment.
 
 
 17
 REVERSED.
 
 
 
 *
 See Rule 34-2(b), rules of the U.S. Court of Appeals for the Eleventh Circuit