**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THE ESTATE OF LAURA RATLEY, by
and through its duly appointed
administrator Robert Ratley; LEAH
RATLEY; THE ESTATE OF REBECCA
FULCHER, by and through its duly
appointed special administrators John
Fulcher and Amy Fulcher; RYAN
FULCHER,

     Plaintiffs - Appellants,

and

AMY RATLEY; ROBERT RATLEY;
AMY FULCHER; JOHN FULCHER,

     Plaintiffs,

v.

DHAFER M. AWAD; SHAMROCK
FOODS COMPANY, LLC,

     Defendants - Appellees.

No. 23-6169
(D.C. No. 5:19-CV-00265-PRW)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

A federal court sitting in diversity must predict what the state supreme court would decide when no applicable state law exists. But when the state supreme court has already spoken on the matter, a federal court's task is simply to ascertain and apply existing state law.

Sitting in diversity, the Western District of Oklahoma held that Defendant Dhafer Awad's truck, parked entirely out of the highway travel lane but atop the shoulder rumble strips, was not the proximate cause of a collision that killed Rebecca Fulcher and Laura Ratley and injured Ryan Fulcher and Leah Ratley (collectively, Plaintiffs). It also granted Awad's employer, Defendant Shamrock Foods, judgment on the pleadings, holding that Oklahoma law precluded Plaintiffs from asserting a claim for negligent hiring, training, supervision, and retention against Shamrock Foods because it stipulated that Awad was acting within the scope of his employment at the time of the accident.

Plaintiffs appeal the district court's orders granting Defendants' motions for summary judgment and judgment on the pleadings. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm. We deny Plaintiffs' motion to certify its question to the Oklahoma Supreme Court.

I.

In the early hours of April 5, 2017, Plaintiff Ryan Fulcher drove his minivan westbound on the Cimarron Turnpike with his sister, Rebecca Fulcher, his girlfriend, Leah Ratley, and his girlfriend's sister, Laura Ratley. The roadway was dark and

wet, but the minivan's headlights were bright and the road was level and straight. Fulcher's view of the road was unobstructed and spanned a half mile.

At around 1:30 a.m., Fulcher fell asleep at the wheel and veered outside the traffic lane onto the right shoulder of the turnpike where Awad parked his Shamrock Foods semi-truck. Awad deployed no warning devices or lights before parking. And, although he parked entirely out of the travel lane, the truck covered the rumble strips on the highway's shoulder. The minivan's electronic data shows that one second before impact, the vehicle drifted onto the rumble strips on the right shoulder and that 0.2 seconds before impact, Fulcher started to correct his steering. But he corrected too late. Fulcher's minivan, traveling at 74 miles per hour, collided with the back of the semi-truck, killing Laura and Rebecca and injuring Fulcher and Leah.

Fulcher and Leah Ratley, along with the estates of Laura and Rebecca, sued Shamrock Foods and Awad (collectively, Defendants) in the Western District of Oklahoma alleging (1) negligence against Shamrock Foods and Awad; (2) negligent hiring, training, supervision, and retention against Shamrock Foods; and (3) negligent entrustment against Shamrock Foods. Defendants moved for judgment on the pleadings on Plaintiffs' negligent hiring, training, supervision, and retention claim (negligent hiring claim). On May 7, 2021, the district court granted that motion, concluding that Jordan v. Cates, 935 P.2d 289, 294 (Okla. 1997) precluded Plaintiffs from asserting the claim. The district court denied Plaintiffs' motion for reconsideration of that order.

On September 28, 2023, the district court granted summary judgment to Defendants on the remaining claims and dismissed the case. In its order, the district court concluded that after considering Oklahoma's myriad of "parked car cases," a jury would have no evidence from which it could reasonably find a causal nexus between Awad's actions and Plaintiffs' resulting injuries.

Plaintiffs now appeal, arguing that the district court erred in granting summary judgment when it (a) concluded that Awad was not the proximate cause of Plaintiffs' injuries, and (b) determined causation based on disputed material facts. Plaintiffs also argue that the district court erred by granting judgment on the pleadings as to their negligent hiring claim. And Plaintiffs now move to certify a question to the Oklahoma Supreme Court concerning the scope of Jordan v. Cates. We first address the district court's summary judgment order, then its order granting judgment on the pleadings. We also consider Plaintiffs' motion to certify its question to the Oklahoma Supreme Court.

## II.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008) (citing Trujillo v. Univ. of Colo. Health Sciences Ctr., 157 F.3d 1211, 1213 (10th Cir. 1998)). We affirm a grant of summary judgment only if no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). Facts are "material" if, under the governing law, they could affect the outcome of the lawsuit.

4

Adamson, 514 F.3d at 1145 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Disputes are "genuine" if a rational jury could find for the nonmoving party on the evidence presented.  Id.  The moving party is entitled to summary judgment when the nonmoving party fails to make a "sufficient showing on an essential element of her case" for which she bears the burden of proof.  Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137–38 (10th Cir. 2016) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

On the merits, we apply Oklahoma negligence law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d 1152, 1162 (10th Cir. 2017).  Oklahoma courts define negligence as "(1) the existence of a duty on the part of a defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting from the violation."  Dirickson v. Mings, 910 P.2d 1015, 1018 (Okla. 1996) (citing Sloan v. Owen, 579 P.2d 812, 814 (Okla. 1977)).

Proximate cause is "the efficient cause which sets in motion the chain of circumstances leading to the injury."  Id. (quoting Thur v. Dunkley, 474 P.2d 403, 405 (Okla. 1970)).  But if the defendant "merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury," the condition is not the injury's proximate cause.  Dunkley, 474 P.2d at 405.  We distinguish between proximate cause and conditions based on foreseeability.  Dirickson, 910 P.2d at 1019.  A defendant's negligence is the proximate cause of an injury, rather than a condition, if the injury was "reasonably anticipated as the

5

probable result of the breach." Id. This standard requires courts to consider what injuries the defendant could foreseeably cause in the context of a particular case. The Oklahoma Court of Appeals has offered this guidance in parked-car cases: injuries are foreseeable, and the defendant's negligence is the proximate cause of a plaintiff's injuries if the plaintiff "is unable to avoid the parked vehicle." Hinds v. Warren Transp., Inc., 882 P.2d 1099, 1101 (Okla. Civ. App. 1994). Whether any evidence can establish a causal connection between the negligence of the parked car and a plaintiff's injuries is a question of law for the court. Jackson v. Jones, 907 P.2d 1067, 1073 (Okla. 1995).

Oklahoma courts have analyzed proximate cause in a slew of "parked car cases" decided over the last several decades. Dirickson, 910 P.2d at 1017–18. The district court observed that the "sheer variety of negligent acts" and "ambient circumstances" have made it "impossible to divine a single rule" to determine when a parked car is a mere condition or the proximate cause of a plaintiff's injuries. Ratley v. Awad, 2023 WL 7221360, at *2 (W.D. Okla. Sept. 28, 2023). That said, Oklahoma courts have repeatedly "den[ied] recovery to a plaintiff whose vehicle collides [with] a defendant's vehicle parked in the roadway if the plaintiff should have seen the parked vehicle and was able to avoid the collision."[1] Hinds, 882 P.2d at 1101 (emphasis omitted).

_____

[1] In 1973, the Oklahoma legislature abandoned its contributory negligence scheme and instead adopted a comparative negligence law. Smith v. Jenkins, 873 P.2d 1044, 1047 n.15 (Okla. 1994). At oral argument, Plaintiffs argued for the first time that Defendants' Oklahoma Supreme Court cases decided before 1973 are not

In Sturdevant v. Kent, 322 P.2d 408, 410 (Okla. 1958), a driver collided with the back of a parked pickup truck because he looked away from the road. Although the rear of the truck jutted several feet into the street, in violation of a city ordinance, the Oklahoma Supreme Court reversed the jury's verdict for the driver, holding that the driver was the proximate cause of the injury because he could have seen the truck had he "look[ed] where he was going." Id. The Court agreed that a "motorist colliding with an automobile parked on the highway is guilty of negligence proximately causing the collision if he could have seen the parked automobile in time to avoid the collision." Id. (quoting De Witt Blashfield, Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., sec. 2641).

Likewise in Mote v. Hilyard, 358 P.2d 844, 845 (Okla. 1961), the Oklahoma Supreme Court again held that a driver proximately caused an automobile collision where he had an unobstructed view of the accident area and could have avoided hitting the parked car. The driver came over the crest of a hill, saw that two cars were parked on the sides of the highway, and attempting to avoid hitting the car on the right side of the road, the driver swerved his car to the left, colliding with the car on the left. Id. at 844. Because the driver had an unobstructed view of the area more

---

controlling and do not bar the possibility of Plaintiffs' recovery. But, Plaintiffs did not develop this argument either in the briefs they filed in the district court or the appellate briefs they filed in this appeal. Because Plaintiffs raised this theory for the first time at oral argument, we deem the argument waived and decline to consider it. See In re: Motor Fuel Temperature Sales Pracs. Litig., 872 F.3d 1094, 1110 n.4 (10th Cir. 2017) (explaining that failure to raise an argument in an opening brief waives the argument as the "general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief").

than 2,100 feet away but applied his breaks when he was only about 250 or 300 feet from the parked cars, the driver proximately caused the accident. Id. at 845.

The Oklahoma Supreme Court reached the same conclusion in Ryel v. B. F. Walker, Inc., 527 P.2d 584, 585–86 (Okla. 1974). The driver in Ryel saw the illegally parked truck when he was 600 feet away but did not apply his breaks until 60 or 70 feet before impact. Id. at 585. The Court concluded that the driver's own negligence proximately caused the incident because the driver could have stopped before hitting the truck but did not. Id. at 586.

Like the drivers in Sturdevant, Mote, and Ryel, Fulcher's view of Awad's truck was unobstructed. The particular part of the turnpike was level and straight, and despite the rain and darkness, Plaintiffs' own expert opined that Fulcher's unobstructed view spanned more than a half mile. Fulcher testified that, if he hadn't fallen asleep, he would have seen the truck parked on the shoulder of the turnpike. And unlike the parked cars in Sturdevant, Mote, and Ryel, Awad parked his truck entirely outside the travel lane. Plaintiffs' expert admitted that "if [Fulcher] remained within the lane of travel, he would not have hit the truck." So even assuming that Awad's actions were negligent, Fulcher would have seen the truck parked on the shoulder and would not have collided with it. Under the venerable Sturdevant, Mote, and Ryel decisions, Awad's truck was a mere condition and Fulcher proximately caused Plaintiffs' injuries.

Plaintiffs contend, however, that unintentional veering out of a highway lane, whether because of distraction or drowsiness, is foreseeable. According to Plaintiffs,

8

this is the precise purpose of rumble strips on highway shoulders—to alert drowsy or distractive drivers that they are no longer in the lane by communicating something that the drifting driver can feel. Plaintiffs argue that when a driver parks on the rumble strips on the highway shoulder, as Awad did, he takes away a drowsy driver's opportunity to regain control and return to the travel lane.

We don't necessarily disagree with Plaintiffs' contentions. But, even if Plaintiffs are correct that distracted or drowsy drivers are likely to benefit from rumble strips on a highway shoulder, that fact is largely irrelevant. Oklahoma law requires us to consider the specific underlying negligent act and consider whether the plaintiff's injury was foreseeable or reasonably anticipated as the probable result of that negligent act. Dirickson, 910 P.2d at 1019. We do not ask whether a drowsy driver using the rumble strips on the highway shoulder is reasonably foreseeable but whether Plaintiffs' injuries were a reasonably foreseeable result of Awad's decision to park his truck on the shoulder of the highway, on the rumble strips.

According to Oklahoma law, injuries resulting from a parked car are not foreseeable if a plaintiff is able to avoid the parked vehicle. Hind, 882 P.2d at 1101; see also Sturdevant, 322 P.2d at 410; Mote, 358 P.2d at 845; Ryel, 527 P.2d at 585–86. Fulcher could have avoided Awad's truck—parked entirely out of the travel lane—had he been awake. Therefore, under Oklahoma law, Plaintiffs' injuries from the collision were not a foreseeable result of Awad's conduct. Thus, Awad's conduct created a condition, not a cause. The district court therefore did not err in granting

9

summary judgment by concluding that the Plaintiffs failed to establish an essential

element of their negligence claim. [2]

_____

[2] After carefully analyzing Oklahoma supervening-cause law, the dissent concludes that the district court erred by granting summary judgment on supervening cause as a matter of law. The dissent reaches this conclusion even though the Plaintiffs briefed only a portion of the supervening-cause issue. Plaintiffs discussed only whether Fulcher's drowsiness was foreseeable. But a supervening cause must not only be (1) foreseeable but also (2) "independent of the original act" and (3) "adequate of itself to bring about the result." Robinson v. Okla. Nephrology Assocs., Inc., 154 P.3d 1250, 1256 (Okla. 2007) (quoting Graham v. Keuchel, 847 P.2d 342, 348 (Okla. 1993)). We can affirm on any ground supported by the record. Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004) (citing Stillman v. Tchrs. Ins. & Annuity Ass'n Coll. Ret. Equities Fund, 343 F.3d 1311, 1321 (10th Cir. 2003)). But we generally will not reverse the district court's judgment based upon a ground not raised by the parties. Petrini v. Howard, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (citing Pell v. Azar Nut Co., 711 F.2d 949, 950 (10th Cir. 1983)). Indeed, we carefully avoid bypassing the adversarial nature of the legal system and exercise our power to reverse on a theory not addressed by the parties only rarely and where "exceptional circumstances" exist. United States v. Caro, 965 F.2d 1548, 1558 (10th Cir. 1992) (citing United States v. McNulty, 729 F.2d 1243, 1269 (10th Cir. 1983)); see also United States Sec. & Exch. Comm'n v. Young, 2022 WL 2977080, at *4 (10th Cir. July 28, 2022), adhered to, 121 F.4th 70 (10th Cir. 2024)).

Here, Plaintiffs did not brief or argue the basis for the dissent's conclusion before the district court or in their opening brief, instead pressing their case in a more limited fashion. "In our adversary system . . . in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Denver Homeless Out Loud v. Denver, Colo., 32 F.4th 1259, 1280 (10th Cir. 2022) (Rossman, J., dissenting) (quoting Greenlaw v. United States, 554 U.S. 237, 243 (2008)). Consistent with this principle, "[w]e have cautioned that 'our discretion to hear issues for the first time on appeal' is to be exercised 'only in the most unusual circumstances,' such as 'where the proper resolution of the issue is beyond any doubt' or where 'injustice might otherwise result." Id. at 1281 (quoting Lyons v. Jefferson Bank & Tr., 994 F.2d 716, 721 (10th Cir. 1993)).

Plaintiffs give no persuasive reason to use our limited authority to reverse based upon an issue they did not present. Indeed, they failed to make the arguments underlying the dissent's reasoning in either the district court or in their opening brief. Without developed briefing on all three supervening-cause components, reversal would tread unnecessarily on the adversary process—an especially imprudent

\* \* \* \*

Plaintiffs also argue that the district court erred in granting summary judgment in light of genuinely disputed material facts. Plaintiffs list twenty-one disputed facts in their opening brief. Almost all these facts relate to Awad's alleged negligence in parking his truck on the shoulder of the highway and failing to use hazard lights. But Awad's truck did not proximately cause Plaintiffs' injuries. And even if Awad negligently failed to employ his emergency parking lights, Plaintiff would not have seen the lights because he was asleep. Disputed facts related to Awad's negligence in parking and failing to use hazard lights, therefore, are immaterial.

Plaintiffs' other facts relate to Awad's failure to use emergency triangles. Plaintiffs argue that it is both disputed and material whether Fulcher would have "seen, hit and felt, or otherwise encountered the warning triangles if truck driver Awad properly placed them at 200 and 100 feet as required by law." According to Plaintiffs, "if Awad had deployed the mandated safety triangles the Fulcher minivan would have hit them and they would have exploded in front of him," and that "[a]

---

decision given that the proper resolution of the supervening-cause issue is certainly not beyond any doubt.

Moreover, existing precedent resolves the case at hand. When a plaintiff's vehicle collides with a defendant's vehicle parked in or out of the roadway, and if he should have seen the parked vehicle and could have avoided the collision, Sturdevant, Mote, and Ryel require we hold the plaintiff to be the proximate cause of the accident as a matter of law. Sturdevant's, Mote's, and Ryel's rules are not merely "relevant" to our decision, they are binding. Fulcher collided with Awad's vehicle parked outside the roadway. Fulcher also could have seen the parked vehicle and could have avoided the collision had he been alert. We conclude that under Oklahoma law Fulcher proximately caused the collision.

11

reasonable juror could conclude that hitting a safety triangle . . . would have alerted Ryan Fulcher to a semi being parked on the emergency shoulder."

Despite Plaintiffs' representations, whether the emergency triangles would have awoken Fulcher, thereby allowing him to avoid Awad's truck, is not genuinely disputed. While Plaintiffs' expert opined that emergency triangles would have exploded as Fulcher hit them, the expert also admitted the triangles are "too flimsy" to "disturb a driver who's asleep." Plaintiffs' allegations do not show a factual dispute sufficient to preclude summary judgment.

In sum, the district court did not err in granting Defendants' motion for summary judgment.[3]

### III.

Plaintiffs argue that the district court erred in granting Defendants' motion for judgment on the pleadings and dismissing their claims against Shamrock Foods for negligently hiring, training, supervising, and retaining Awad.

We review de novo a district court's judgment on the pleadings under Federal Rule of Civil Procedure 12(c), applying the same standards used for motions to

---

[3] In its order granting Defendants summary judgment on proximate cause, the district court also concluded that Plaintiffs no longer had a viable negligent-entrustment claim. Because we affirm the district court's grant of summary judgment to Awad, we, like the district court, need not reach the merits of Plaintiffs' negligent-entrustment claim. Without an actionable negligence claim against the employee, Plaintiffs' negligent-entrustment claim against the employer fails. See Clark v. Turner, 99 P.3d 736, 743 (Okla. App. 2004) (explaining that it is actionable negligence "of the driver that provides the causal connection necessary to establish liability in tort between the negligence of the entrusting owner and injuries sustained by the plaintiff").

12

dismiss under Rule 12(b)(6).  BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co., 830 F.3d 1195, 1200 (10th Cir. 2016).  We uphold a district court's decision to grant judgment on the pleadings only when a plaintiff cannot prove facts entitling her to relief.  Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000) (quoting Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 529 (10th Cir. 1992)).  We may affirm on any basis supported by the record, even those grounds not reached by the district court.  Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2011) (citing United States v. Davis, 339 F.3d 1223, 1227 (10th Cir. 2003)).

The district court granted Defendants' motion for judgment on the pleadings holding that under Jordan v. Cates, 935 P.2d 289, 294 (Okla. 1997), courts must dismiss a plaintiff's negligent-hiring claim when the employer admits the employee acted in the scope of their employment, as Shamrock Foods did here.  On appeal, Plaintiffs argue that the Oklahoma Supreme Court in Fox v. Mize, 428 P.3d 314, 322 (Okla. 2018), substantially limited Jordan's applicability to only cases involving a battery claim against an employee and a negligent-hiring claim against the employer. Plaintiffs contend that because they assert a negligence claim against Awad and a negligent-hiring claim against Shamrock Foods, Jordan does not control.

We need not decide whether Jordan controls here because even if Plaintiffs could bring their negligent-hiring claim, they cannot satisfy the elements of negligent

13

hiring.[4]  To state a claim for negligent hiring under Oklahoma law, a plaintiff must show that "at the critical time of the tortious incident," the employer "had reason to believe that the [employee] would create an undue risk of harm to others" based on the employer's "prior knowledge of the [employee's] propensity to commit the very harm for which damages are sought."  N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla. 1999).  The claim is "based on an employee's harm to a third party from employment."  Le v. Total Quality Logistics, LLC, 431 P.3d 366, 375 (Okla. Civ. App. 2018).

Here, Awad did not proximately cause Plaintiffs' injuries.  Thus, as a matter of law, there is no tortious incident for which Awad is responsible.  Because negligent hiring claims are based on an *employee's harm* to a third party, without a tort, there is

---

[4] Plaintiffs move to certify to the Oklahoma Supreme Court the question of whether Jordan v. Cates precludes a plaintiff from asserting a negligent hiring claim against a defendant employer when (a) the plaintiff asserts negligence against a defendant employee, and (b) the employer stipulates that its employee acted within the scope of their employment at the time of the incident, assuming vicarious liability under the doctrine of respondeat superior.

We deny this motion for three reasons.  First, the Oklahoma Supreme Court's answer to Plaintiffs' question would not affect this case because Plaintiffs cannot establish the required elements of negligent hiring.  Second, the United States District Court for the Northern District of Oklahoma issued an order certifying this exact question to the Oklahoma Supreme Court in Richardson v. Sibley, No. 23-59 (N.D. Okla.).  See Richardson v. Sibley, 2024 WL 709206, *1 (N.D. Okla. Feb. 21, 2024).  Third, we rarely certify questions to a state supreme court when a party does not initially seek certification from the district court but raises the certification for the first time on appeal after adverse district court rulings.  See In re Midpoint Dev. LLC, 466 F.3d 1201, 1207 (10th Cir. 2006).  In this case, Plaintiffs waited until it received two adverse district court rulings to move to certify their question to the Oklahoma Supreme Court.  For these reasons, we deny Plaintiffs' motion.

14

no negligent-hiring claim.  See N.H., 998 P.2d at 600.  So regardless of whether

Jordan precludes Plaintiffs' claim, their negligent hiring claim would still inevitably

fail.  And although our reasoning differs from the basis of the district court's Rule

12(c) ruling, we can affirm on any basis supported by the record.  Richison, 634 F.3d

at 1130.  We hold therefore that the district court did not err in granting Defendants'

motion for judgment on the pleadings. [5]

IV.

The judgments of the district court are AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[5] After the district court issued its Rule 12(c) order, Plaintiffs submitted a motion entitled "Motion for Leave to Amend Pleading and/or Motion for Reconsideration to Reassert Plaintiffs' Claims of Negligent Hiring, Training, and Supervision, and Brief in Support."  The district court stated in its May 11, 2022 order that it construed Plaintiffs' motion as a motion for reconsideration.  Plaintiffs argue on appeal that the district court erred in denying Plaintiffs' motion for leave to amend their complaint.  Because we determined that no matter how Jordan applied to Plaintiffs' claim Plaintiffs could not establish the required elements of a negligent-hiring claim, we need not reach the merits of whether the district court erred in denying Plaintiffs' motion for leave to amend their complaint.

*Estate of Ratley, et al. v. Awad, et al.*, No. 23-6169
**FEDERICO**, Circuit Judge, dissenting:

Under Oklahoma law, "'[p]arked car cases'" do not have special rules, but are controlled by the general rules of negligence law." *Dirickson v. Mings*, 910 P.2d 1015, 1017-18 (Okla. 1996). For decades, Oklahoma courts and this court have wrestled with fact-patterns of plaintiff-drivers suing defendant-truckers/trucking companies for injuries sustained after plaintiffs crashed their cars into defendants' parked trucks on Oklahoma roads and highways. From the many judicial opinions that have risen from these cases, the district court correctly discerned that "the sheer variety of negligent acts" in "parked car cases . . . make it impossible to divine a single rule" when it comes to distinguishing "a stopped vehicle that is a 'mere condition' from one that is a proximate cause." Aplt. App. VII at 75.

However, despite the acknowledgement that there is not "a single rule" from Oklahoma law that applies to "parked car" cases, first the district court, and now the majority, adopted and applied a hard-and-fast rule to conclude the defendants are entitled to a summary judgment. Their rule is thus: if a driver can see and should have avoided hitting a parked car, then the driver of the parked car is effectively immune from suit because the parked car as a matter of law is deemed a mere condition and not a proximate cause of the injuries.

But Oklahoma negligence law is more nuanced than the categorical rule declared by the majority. Ultimately, I conclude this case should proceed to trial before a jury and should not have been dismissed by the district court at summary judgment. I respectfully dissent.

## I. Oklahoma Negligence Law

A plaintiff pursuing a negligence claim under Oklahoma law must satisfy three elements: (1) a duty owed by the defendant, (2) breach of that duty, and (3) injuries to the plaintiff proximately caused by the defendant's failure to meet that duty. *Fargo v. Hays-Kuehn*, 352 P.3d 1223, 1227 (Okla. 2015). When evaluating negligence claims, the Oklahoma Supreme Court has expressed a clear preference for juries to evaluate a defendant's actions. *Id.*

The district court acknowledged the elements of a negligence claim and then zeroed-in on proximate cause, assuming the other elements to be satisfied. It found that all evidence of visibility of the parked truck was "beside the point," because "Plaintiff Fulcher's uncontroverted testimony is that he closed his eyes and fell asleep." Aplt. App. VII at 78. So according to the district court, proximate cause was lacking, as a matter of law, and "road conditions played no role in Plaintiff's Fulcher's failure to see the truck." *Id.* at 79.

The majority also focuses solely on the proximate cause element of the negligence claim. It frames the question on appeal as "whether Plaintiff's

2

injuries were a reasonably foreseeable result of Awad's decision to park his truck on the shoulder of the highway, on the rumble strips." Maj. Op. at 9. The majority is right to also focus on Awad's actions, but, in my view, it glosses over the duty and breach elements of negligence, which is where I begin.

## II.  Duty & Breach – Awad's Negligence

We should first consider the duty owed by Awad to Fulcher and other motorists who were traveling on the Cimarron Turnpike the night of the accident. "Concerning duty of care, a driver of a motor vehicle must, at all times, use that degree of care which is reasonable and prudent under the circumstances." *Dirickson*, 910 P.2d at 1018 (citing *Agee v. Gant*, 412 P.2d 155, 159 (Okla. 1966)).

In opposing summary judgment, Plaintiffs established that Awad, a commercial truck driver, owed a duty of care to not park on the shoulder in a non-emergency situation. Likewise, they demonstrated that by using the shoulder of the highway as an overnight parking spot without taking any steps to warn oncoming motorists, Awad violated both state and federal commercial trucking regulations that required him to use lights or flares and safety triangles. *See* 47 Okl. Stat. § 12-408 (requiring the display of "warning devices" by a disabled commercial vehicle, including those on the highway "shoulder"); 49 C.F.R. § 392.22 (same; federal regulation).

3

Awad compounded his negligence by parking on top of the rumble strips, disabling them from warning Fulcher in time for him to correct his lane departure. It also is relevant, given that he is a commercial truck driver, that the facts taken in the light most favorable to the nonmovants show that Awad used the shoulder as a parking spot only because he had no planned route, had no planned stops, and was within thirty seconds of exceeding the limit on his allowable driving time when he abruptly parked his commercial truck on the shoulder. Aplt. App. VI at 12-15.

Given these facts, Plaintiffs showed why Awad's failure to warn oncoming drivers was unreasonable and a breach of his duty of care. At a minimum, "whether [Awad]'s actions meet the standards of due care, is exclusively a question for the jury unless under the facts, reasonable minds could not differ." *Fargo*, 352 P.3d at 1227.

In consideration of the duty and breach, take the *Sturdevant* case, which defendants argued is "controlling here" because of its conclusion regarding proximate cause. OA at 15:50-55. *Sturdevant* was decided in 1958 and involved a "pick-up truck, loaded with tools and roofing materials," that was parked in a city "drivein entrance into the school grounds" with "the rear of the truck out in the street several feet." *Sturdevant v. Kent*, 322 P.2d 408, 409 (Okla. 1958). The duty owed by a driver of a commercial pickup truck attempting to park off

4

a city street on school grounds differs from the duty of a licensed commercial trucker who parks on a highway shoulder (especially in a non-emergent situation and in disregard of the current safety laws and regulations that apply to a truck driver, commercial trucking, and highways).

The Plaintiffs spelled this out before the district court and again on appeal, to demonstrate why there are genuine disputes of material facts regarding the duty, breach, and causation elements of the negligence claim such that summary judgment is not warranted. The majority found that any disputed "facts related to Awad's negligence in parking and failing to use hazard lights" are "immaterial." Maj. Op. at 11.

But negligence is a holistic claim under Oklahoma law, and "[i]n evaluating the evidence of causation for purposes of summary judgment, a trial court should view the totality of the evidence and not focus on a single word—'causation'—or a single piece of evidence." *Jones v. Mercy Health Ctr., Inc.*, 155 P.3d 9, 15–16 (Okla. 2006) (reversing summary judgment); *see also Fargo*, 352 P.3d at 1227 (emphasizing that "whether [one driver in a collision] acted reasonably cannot be answered without considering the actions of" the other driver" they collided with). Which is to say, the facts relevant to duty and breach are also necessary and relevant to a consideration of proximate cause and foreseeability, which is the heart of this appeal and where I now turn.

5

### III.  Proximate Cause

"Proximate cause is always a question for the jury unless there is no evidence from which a jury could reasonably find a causal connection." *Fargo*, 352 P.3d at 1227. As stated, both the district court and the majority conclude that a jury should not determine proximate cause in this case because, as they view it, "Awad's truck was a mere condition and Fulcher proximately caused Plaintiff's injuries." Maj. Op. at 9.

In other words, the district court and majority decide this case by applying Oklahoma's "mere condition" rule to proximate cause. *John Long Trucking, Inc. v. Greear*, 421 F.2d 125, 127 (10th Cir. 1970). This court long ago said that this rule "does not mean that everyone who negligently parks his vehicle is relieved of all liability when some other person even negligently collides with his vehicle. The intervening act may or may not supersede the antecedent negligence depending upon a variety of situations . . . ." *Id.*

Here, that means we must look to whether the intervening or supervening act (Fulcher falling asleep and drifting onto the shoulder) superseded Awad's negligence. Put differently, the issue is whether Fulcher falling asleep and drifting onto the shoulder was a supervening cause that broke the chain of causation, relieving Awad of liability.

6

## A. Oklahoma Law – Supervening Cause

Under Oklahoma law, "a supervening cause is a legal mechanism that breaks the chain of causation between an original actor and the injury to a plaintiff." *Evers v. FSF Overlake Assocs.*, 77 P.3d 581, 586 (Okla. 2003). "A supervening cause is a new, independent and efficient cause of the injury which was neither anticipated nor reasonably foreseeable." *Akin v. Mo. Pac. R.R. Co.*, 977 P.2d 1040, 1054–55 (Okla. 1998). A supervening cause arises when the "causal chain between a negligent act and an injury [is] broken by an intervening event." *Johnson v. Hillcrest Health Ctr., Inc.*, 70 P.3d 811, 819 (Okla. 2003).

Yet supervening cause is an exception to proximate cause, not the rule. "Not every intervening event severs the causal link between the negligent act and injury." *Id.* Indeed, "[w]hen a cause merely combines with another act to produce injury, or several events coincide to bring about a single injury, each negligent actor may be held accountable." *Id.* The mere fact that the second cause is sequentially after the first cause does not render it a supervening cause. *See Lockhart v. Loosen*, 943 P.2d 1074 (Okla. 1997) (explaining that "where the primary act of negligence is not superseded by a second cause—i.e., continues to operate concurrently, so that damage is the result of both causes

7

acting in concert—each act may be regarded as the proximate cause and the wrongdoers [will each be] liable for the plaintiff's compensable harm.").

The majority opinion does not mention, let alone analyze, a supervening cause, opting instead to skip to the end and address only foreseeability. The district court acknowledged the supervening cause analysis to find that Fulcher "falling asleep at the wheel and drifting off the road constitutes a supervening act." Aplt. App. VII at 80. However, although the district court mentions the "relative foreseeability framework applicable to supervening causes in Oklahoma[,]" it then curiously takes a detour towards Tennessee law.[1]

The district court, in fact, did not cite *any* Oklahoma case in support of its ruling on supervening cause. The failure to apply controlling Oklahoma law makes a difference here. Oklahoma law and Tennessee law on proximate cause

---

[1] The district court stated: "[b]ut such generalized foreseeability theories hold little weight under the relative foreseeability framework applicable to supervening causes in Oklahoma and many other states." Aplt. App. VII at 79. To support this statement, it cited *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 403–07 (6th Cir. 2004) (applying Tennessee law), without analyzing Tennessee law or explaining why it declined to cite to or rely on Oklahoma law. It did this despite spending the several pages (correctly) setting forth Oklahoma law on proximate cause and supervening cause. It also mentioned a Wyoming case on negligence, *Wood v. CRST Expedited, Inc.*, 419 P.3d 503, 511–12 (Wyo. 2018), which is also inapplicable in the face of controlling Oklahoma law.

and superseding cause depart in at least two material ways. First, under Tennessee law, supervening cause is governed by a four-factor test, *see Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 298–99 (Tenn. 2017), not three factors, as in Oklahoma.

Second, under Tennessee law, supervening cause is an affirmative defense. *Davis v. McGuigan*, 325 S.W.3d 149, 161 (Tenn. 2010).[2] The district court, however, failed to place any burden on Defendants, nor did it cite any evidence (or fact or expert witness testimony) offered by Defendants in support of summary judgment.

The failure to properly apply Oklahoma law regarding supervening causes was error. Moreover, the application of this law also demonstrates why summary judgment was not warranted for Defendants.

---

[2] The Oklahoma Supreme Court does not appear to have confronted this question, but many other jurisdictions have. Most courts have held that supervening or superseding cause is an affirmative defense for which the defendant bears the burden. *See, e.g.*, *Roberts v. Printup*, 595 F.3d 1181, 1189–90 (10th Cir. 2010) (describing superseding cause as an affirmative defense); *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 298 (5th Cir. 2021) (same); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 45 (1st Cir. 2013) (same); *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 757 (7th Cir. 2011) (same); *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 773 n.4 (3d Cir. 2009) (same); *Kane v. Lewis*, 604 F. App'x 229, 240 (4th Cir. 2015) (Harris, J., concurring) ("In tort law, a superseding cause acts as an affirmative defense, and the defendant bears the burden of proving its existence.").

**B.  Supervening Cause Analysis**

For an intervening cause to "qualify" as a supervening cause, it "must be (1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable to the original actor." *Robinson v. Okla. Nephrology Assocs., Inc.*, 154 P.3d 1250, 1256 (Okla. 2007) (quoting *Graham v. Keuchel*, 847 P.2d 342, 348 (Okla. 1993)). Unless all three elements of supervening cause are satisfied, judgment as a matter of law is improper. *See id.* at 1256–57. Rephrased to this case, to obtain summary judgment based on supervening cause, Defendants were required to prove as a matter of law that Fulcher's falling asleep at the wheel and drifting onto the Cimarron Turnpike shoulder was (1) independent of Awad's parking on the shoulder; (2) adequately capable of causing the collision without any negligence by Awad, and (3) not foreseeable. *Id.*

Defendants met the first element of supervening cause. No one challenges that Fulcher's drifting onto the shoulder was independent of Awad's decision to park on the shoulder. Regarding the second and third elements, however, the district court sidestepped material facts that precluded summary judgment.

10

### 1. Adequacy

As to the adequacy of Fulcher's negligence, this is not a case where Fulcher's negligence alone could have caused a collision. Rather, it was Awad's *concurrent* negligence of parking on the shoulder that blocked Fulcher from returning to the highway after his momentary, two-second swerve onto the highway shoulder. Aplt. App. VI at 15. As the majority recounts, "one second before impact, [Ryan Fulcher's] vehicle drifted onto the rumble strips on the right shoulder and . . . 0.2 seconds before impact, Fulcher started to correct his steering." Maj. Op. at 3.

If we "consider all of the evidence in the record" and draw all inferences "in the light most favorable to" the nonmovants, as our summary judgment standard requires, *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023), a reasonable jury could conclude that Fulcher would have corrected his course and returned to his lane of travel, but for Awad's commercial truck being unlawfully parked on top of the rumble strips. The district court's summary judgment decision, in fact, cites no evidence – fact or expert – offered by Awad to prove that Fulcher's drifting onto the shoulder was on its own adequate to cause the collision. As we have recognized, a second actor's negligence "becomes the supervening cause only if '[their] actions were *the* proximate cause' of the injury, as opposed to merely *a* proximate cause of

11

the injury." *BNSF Ry. Co. v. C.A.T. Constr., Inc.*, 679 Fed. App'x. 646, 656 (2017) (quoting *Hamilton v. Allen*, 852 P.2d 697, 700 (Okla. 1993)).[3]

Plaintiffs introduced sufficient evidence to reach a jury on the second element of supervening cause. As illustrated by Figure 1[4] below, a reasonable jury could find that Fulcher's negligence, on its own, was not the sole cause of the collision. Both *before* and *after* Fulcher dozed off, it remains a material fact question whether Fulcher could have avoided the collision but for Awad's negligence. In other words, it is factually unclear whether Awad might have also been a proximate (and, thus, along with Fulcher, a concurrent) cause of the collision by (1) not using flares, lights, or hazard triangles, and (2) parking on top of the rumble strips:

---

[3] We cite an unpublished opinion only for its persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[4] Figure 1 was not created by the parties and does not appear in the record of the case.

12



The district court either did not address the facts supporting Plaintiffs or it improperly construed the facts and inferences taken from them in the light most favorable to Defendants, the movants. Our summary judgment standard under Federal Rule of Civil Procedure 56 requires the opposite approach, and we are obligated to reverse summary judgment if a district court has "failed to credit evidence favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *Forth*, 85 F.4th at 1052 (collecting cases).

We corrected nearly the same legal errors in *Lazy S Ranch Properties, LLC v. Valero Terminaling & Distribution Co.*, 92 F.4th 1189 (10th Cir. 2024). There, as here, the district court wrongly granted summary judgment after failing to credit the nonmovant's causation evidence and not drawing all

reasonable inferences on causation in the nonmovant's favor. *Id.* at 1206. We reversed, explaining that "[g]iven the contested evidence, a reasonable jury could decide [the disputed issue] either way, depending upon its view of the evidence and the credibility of the experts." *Id.* We should reverse here for the same reasons.

## 2. Foreseeability

Even if the majority concludes that Defendants met the second element of supervening cause, the third element, foreseeability, was affirmatively *disproven* against Awad.

In Oklahoma, "whether the injuries flowing from the original negligence could have been foreseen is a question within the realm of fact and not law." *Fargo*, 352 P.3d at 1228–29 (reversing summary judgment); *see also Jackson v. Jones*, 907 P.2d 1067, 1073 (Okla. 1995) ("If the intervening force is of a character which (under the circumstances) would induce belief that it might be reasonably expected to occur, the final element is not met and the causal chain will remain unbroken."); *Dirickson*, 910 P.2d at 1017–20 (reversing summary judgment on proximate cause and once again admonishing that under Oklahoma law foreseeability "is to be determined by the jury").

During oral argument in this case, Defendants admitted that it is (and was) foreseeable that another driver might veer onto a highway shoulder and

14

collide with a parked commercial truck. Oral Arg. at 20:19–23:26. That admission is dispositive; a foreseeable cause can never become a supervening cause because "[f]oreseeability" is "*the standard* by which proximate cause, as distinguished from the existence of a mere condition, is to be tested." *Dirickson*, 910 P.2d at 1019 (emphasis added) (quoting *Atherton v. Devine*, 602 P.2d 634, 636 (Okla. 1979)); *accord John Long Trucking, Inc.*, 421 F.2d at 127 (same).

The district court concluded that Plaintiff's "vehicle's foray off the roadway at a speed of 74 miles per hour, and the injuries that followed, were a direct, foreseeable result of Plaintiff Fulcher falling asleep." Aplt. App. VII at 80. But this analysis is incomplete. The driver, Fulcher, may have corrected the foray off the roadway and avoided a fatal collision but for Awad's decision to use the highway shoulder as his overnight parking lot without giving proper warnings (flares, triangles, flashers) to sleepy drivers. The question is whether the foray and resulting injuries were foreseeable to Awad, which Defendant admitted at oral argument that it was.

This leaves little doubt that at trial a reasonable jury could conclude that Fulcher's negligence in drifting onto the shoulder was foreseeable to Awad – a commercial truck driver. *See, e.g., Oakley v. A. L. Logistics, LLC*, No. 20-85, 2024 WL 1120107, at *4 (M.D. Ala. Mar. 14, 2024) ("The foreseeability of such collisions is precisely the reason why Department of Transportation

15

regulations require the use of flashers and warning triangles and why rules are in place requiring the removal of vehicles from the shoulder of busy interstate highways after a certain period, why rumble strips and guardrails are used, and why trees and other stationary structures are generally prohibited within a certain area around an interstate.").

By Oklahoma statute and federal regulation, a commercial truck driver parked on the shoulder is required to use flares or lights and hazard triangles to alert oncoming drivers. Plaintiffs also introduced testimony from Oklahoma State Trooper Todd Punneo, who testified that a truck driver should use a truck stop and not park on a shoulder,[5] along with evidence that truck drivers are trained that parking on the shoulder is dangerous. Expert testimony further established that the trucking industry has long trained commercial truck drivers to avoid parking on the shoulder, because doing so exposes truck drivers and other motorists to avoidable accidents. Here, Awad chose expediency over the safety of others.

---

[5] Trooper Punneo testified that a highway shoulder is an "emergency lane" that should be reserved for true emergencies and that it would be improper for a truck driver to use the shoulder (the "emergency lane") as a parking spot. Aplt. App. IV at 100:22–102:16; *see also id.* at 82:13–20 (same).

16

As previously discussed, there are no special negligence rules for "parked car"[6] cases under Oklahoma law. But as the district court and majority recognize, visibility is at least a relevant through-line in these cases when it comes to foreseeability.

In *Dirickson*, the Oklahoma Supreme Court reversed summary judgment because there was "a fact question as to whether or not" the plaintiff's "ability to see" the defendant's "pickup was obscured by the vehicle in front of" the plaintiff. *Dirickson*, 910 P.2d at 1020. And citing *Dirickson*, the Oklahoma Supreme Court reversed summary judgment in a later case because "[t]he extent to which [a] tree obscured or obstructed [a] stop sign from the view of motorists" on the road created a disputed fact question for a jury. *Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty.*, 60 P.3d 497, 504 (Okla. 2002). In this case, both before and after Fulcher dozed off, Plaintiffs raised material fact issues regarding Awad's visibility to Fulcher at the key fractions of seconds before impact.

To ascertain Oklahoma law, "we look first to 'the most recent decisions of the state's highest court.'" *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989

---

[6] In *Dirickson*, the Oklahoma Supreme Court uses the phrase "parked car" cases to refer to all types of automobiles (including trucks), not simply cars. 910 P.2d at 1017.

17

F.3d 747, 765–66 (10th Cir. 2021) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007)). That is why *Dirickson*, a 1996 case from the Oklahoma Supreme Court, is key to this analysis.

The majority relies on older cases, such as *Sturdevant* (1958), *Mote v. Hilyard*, 358 P.2d 844 (Okla. 1961), *Ryel v. B.F. Walker, Inc.*, 527 P.2d 584 (Okla. 1974), to conclude that "injuries resulting from a parked car are not foreseeable if a plaintiff is able to avoid the parked vehicle." Maj. Op. at 9. These earlier cases have relevance too, but they do not evince the brightline rule of foreseeability and proximate cause that is the foundation of the district court and majority opinions.

In sum, the district court erred by granting summary judgment on supervening cause as a matter of law. *Accord First Tennessee Bank, N.A. v. Wilson Freight Lines, Inc.*, 907 F.2d 1122, 1124–25 (11th Cir. 1990) (reversing summary judgment on proximate cause because "the district court should have given a jury an opportunity to decide whether [the truck driver's] (alleged) failure to activate his warning signal proximately caused the accident").

18

## IV. Vicarious Liability and Negligent Entrustment

The failure to allow Plaintiffs to reach a jury on the negligence claim against Awad resulted in several other errors. Because the district court held that the negligence claim failed, it also entered summary judgment on the two negligence-dependent claims against the employer, Shamrock Foods Company, LLC (Shamrock Foods), for vicarious liability and negligent entrustment. The district court's decision does not offer any reason beyond the mechanical conclusion that Awad's negligence is a necessary ingredient for both negligence claims against Shamrock Foods. These two claims do require underlying negligence by an employee. But importantly, reversal on the negligence claim establishes that we should also reverse summary judgment on these claims.

## V. Negligent Hiring and Supervision

The district court also erred by disposing of the negligent hiring and supervision claim against Shamrock Foods at the pleadings stage on a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. To justify doing so, the district court pointed to the Oklahoma Supreme Court's decision in *Jordan v. Cates*, which holds: "[b]ecause vicarious liability can include liability for punitive damages, the theory of negligent hiring and retention imposes no further liability on [an] employer." 935 P.2d 289, 293 (Okla. 1997). From that line, the district court ruled as a matter of law at the Rule 12(c)

19

pleadings stage that the negligent hiring and retention claim should be dismissed. It did so before any discovery, summary judgment, or trial.

The district court erred for several reasons. First, allowing a plaintiff to pursue a duplicative or inconsistent claim for relief past a motion to dismiss and into discovery does not run afoul of *Jordan*; it only has the potential to impose "further liability on [an] employer." *Id*. *Jordan* is concerned with a plaintiff recovering duplicative damages for both vicarious liability and negligent hiring and supervision. But at the pleadings stage, no liability is imposed, and until discovery occurs, a plaintiff should not arbitrarily be forced to commit to a singular theory of the case. In other words, Defendant Shamrock Foods might have stipulated to vicarious liability, but it did not stipulate to the entry of *a judgment* on vicarious liability. Until "the entry of judgment" occurs in a case, no "binding election" of remedies must occur. *Boulware v. Baldwin*, 545 F. App'x 725, 729, (10th Cir. 2013) (collecting cases); *see also Homeland Training Ctr., LLC v. Summit Point Auto. Rsch. Ctr.*, 594 F.3d 285, 293 (4th Cir. 2010) (same). As a result, the district court erred by prematurely dismissing merely a potentially duplicative claim at the pleadings stage.

Second, allowing a plaintiff to proceed on inconsistent or duplicative claims has long been ensconced in the Federal Rules of Civil Procedure. *See, e.g., Boulware*, 545 F. App'x at 729 ("Federal pleading rules have for a long

20

time permitted the pursuit of alternative and inconsistent claims."). Federal Rule of Civil Procedure 8(d) guarantees a plaintiff the opportunity to plead in the alternative by raising inconsistent claims. *See* Fed. R. Civ. P. 8(d)(2) (allowing a plaintiff to plead "alternatively or hypothetically") and 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). And Rule 8(a)(3) authorizes a plaintiff to demand relief that "may include relief in the alternative or different types of relief." *Id.* As a result, the district court erred by concluding that an inconsistent or duplicative claim must be dismissed at the pleadings stage. *See Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 935 (10th Cir. 2024) (reversing pleadings-stage Rule 12(b)(6) dismissal and explaining that a plaintiff is "entitled" to plead "inconsistent legal theories and inconsistent facts.").

And although we apply the Federal Rules of Civil Procedure to this federal diversity case,[7] Oklahoma law is even more generous in allowing a plaintiff to pursue potentially duplicative claims and not be forced to

---

[7] Oklahoma law likely does apply, however, because the state law issue of election of remedies is intertwined with the pleading standard in Federal Rule 8(d). *See Boulware v. Baldwin*, 545 F. App'x 725, 729 n.5 (10th Cir. 2013) ("Federal pleading rules generally control in federal court. But as this alternative-pleading principle is integrally related to the election-of-remedies analysis here, which may in turn be controlled by state law, we note for completeness' sake that Utah law likewise allows for the pursuit of inconsistent claims at the pleading stage.").

21

prematurely commit to an election of remedies. *See Cranford v. Bartlett*, 25 P.3d 918, 923 (Okla. 2001) ("A party litigant may plead, and rely on at trial, alternative and inconsistent theories or defenses under the Oklahoma Pleading Code[.] Although inconsistent judgments or double recovery may not be permissible, [Oklahoma law] generally allows a party to fully litigate inconsistent theories or defenses at trial.") (citations omitted); *see also State ex rel. Okla. Corp. Comm'n v. McPherson*, 232 P.3d 458, 464 (Okla. 2010) ("It is certainly true that a party litigant may plead, and rely on at trial, alternative and inconsistent theories or defenses under the Oklahoma Pleading Code.").

Third, as a practical matter, different evidence regarding the two different claims against the two different defendants might be uncovered in discovery, and foreclosing discovery on one but not the other is unfair and inefficient, especially when a plaintiff has yet to reach discovery, summary judgment, or trial on either claim. *See, e.g.*, *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 890 (10th Cir. 1997) (In antitrust case involving duplicative theories for tying and monopolization, reversing summary judgment for defendant because "it would be inappropriate to bar [the plaintiff's] claim at this point because of the possibility of multiple liability in this case.").

22

For these reasons, we should reverse the district court's decision to grant the motion for judgment on the pleadings.

## VI. Conclusion

For all the above reasons, this is not an "extreme case" that "may permit a conclusion on proximate cause as a matter of law." *Blanke v. Alexander*, 152 F.3d 1224, 1235 (10th Cir. 1998). Rather, a jury should decide this case, not the court through summary judgment and dismissal on the pleadings. I respectfully dissent.